## HENRY G. WOOD *v.* J. MILLARD TAWES, COMPTROLLER, ET AL.
### JO. V. MORGAN *v.* SAME
### ALEXANDER TUCKER *v.* SAME
### J. H. LEWIS *v.* SAME
### J. MILLARD TAWES, COMPTROLLER, ET AL. *v.* HENRY G. WOOD

[Nos. 16, 17, 18, 19 and 20, October Term, 1942.]

*Decided November 19, 1942.*

The cause was argued before BOND, C. J., SLOAN JOHNSON, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Jo. V. Morgan, Alexander F. Prescott* and *Clarence E. Dawson,* with whom was *Alexander Tucker* on the brief, for appellant Wood and others.

*Hall Hammond, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for appellee Tawes, Comptroller, and others.

BOND, C. J., delivered the opinion of the Court.

The first four appellants, employed by the federal government in Washington, District of Columbia, and residing in Maryland in the year 1939, bring up for review questions of their liability for the State income tax of that year on the amounts of their salaries paid by the federal government; and the State officials appeal in the last case from an exemption of so much of the salary of one as was received during the first three months of the year, when he had not come into the State. On appeals below from rulings of the State Tax Commission, the Circuit Court for Montgomery County held the individual appellants liable, except as to the portion of salary earned by the one before removing into the State.

Henry G. Wood, the first appellant, it was, who took up his residence in the State on March 23, 1939, when he bought a house in Bethesda, in Montgomery County. He has lived there ever since. In 1936, he came from the State of New York to accept the position of legislative draftsman of the United States Senate, a position created under the Revenue Act of 1918, Sec. 1303, 40 Stat. 1057, 1141, and thereafter lived in the District until 1939. By Section 1101 of the Revenue Act of 1924, 42 Stat. 253, 353, 2 U. S. C. A., Sec. 271, the legislative drafting service became known as the office of legislative counsel, and the draftsmen, including this appellant, known as legislative counsel. The compensation has been allocated from time to time by the President of the Senate and Speaker of the House of Representatives, jointly, to the appropriate grade in the compensation schedule of Section 13 of the Classification Act of 1923, 5 U. S. C. A.,

Sec. 673, an Act, as its preamble states, "to provide for the classification of civilian positions within the District of Columbia and in the field services." And the appellant in his Maryland income tax return filed in 1940, claimed an exemption of the amount of compensation so paid him in 1939 because he was a federal official, and especially claimed exemption of the portion of it earned before he came to live in the State.

The appellant Jo. V. Morgan, was domiciled in Montgomery County, Maryland, during the whole of the year 1939. He was the sole member of a Board of Tax Appeals for the District of Columbia, which has jurisdiction to review tax assessments in the District, his findings being subject to review by the United States Court of Appeals for the District. The duties of his position were all performed, and his compensation was paid, in that jurisdiction. On the ground that federal officers are exempt from payment of the State income tax he claims an exemption of his compensation for the year 1939 from the basis of computation of his Maryland income tax.

Alexander Tucker came from New Jersey in 1935 to accept an appointment as a special attorney in the Department of Justice, the position to be held at the will of the Attorney General. He was and is engaged in tax cases before the federal courts, and his compensation for performance of his duties has been earned in the District. He has meanwhile lived in an apartment house in Silver Springs, Montgomery County. He owns no real or personal property in Maryland, and has a residence or dwelling in New Jersey to which he returns frequently, and has personal property there. He claims exemption as a nonresident of the State as well as an officer of the federal government.

J. H. Lewis, the remaining individual appellant, claims a domicile in the State of Michigan, but during all the year 1939 he rented a house and lived in Chevy Chase, Montgomery County. He was a colonel in the National Guard of Michigan, and on May 20, 1938, was, with his

consent, assigned for active duty in the National Guard Bureau of the United States War Department. He returned to Michigan in 1940, when relieved of that duty. His compensation while he was assigned to the War Department was all, of course, earned and paid in the District of Columbia and he claims exemption of the amount from the basis of taxation under the Maryland income tax law as an army officer of the federal government and as a nonresident of the State.

The State law, (Code, 1939, Art. 81, Sec. 230) imposed the tax "on the net income of every resident individual of this State," and in Section 222 (i) defined a resident within the meaning of Section 230 as "an individual domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not." It expressly excluded from the gross income which is subject to deductions to ascertain the net income to be taxed (Section 223 k), that "which this State is prohibited from taxing under the Constitution of the United States, or under any Act of Congress * * * in conformity therewith," and under Section 231 allows a deduction of any amount of income tax which the individuals may have paid to another State. All four of the individuals now appealing were residing in the State on the last day of the taxable year, but the fact, we think, is not of importance in the questions they raise.

Whatever application the words "domicile" and "resident" may require elsewhere, under this statute the tax is imposed on incomes of every individual who for more than six months of the taxable year maintained a place of abode within the State, whether domiciled in the State or not. It is a provision contained in a large number of State income tax statutes. Maintenance of a place of abode, however, must involve at least a sufficient residence within the State to bring the individual within the taxing jurisdiction, otherwise the exaction might amount to a deprivation in violation of the Fourteenth Amendment

of the United States Constitution. But subject to that qualification the State has power to impose the tax on such individuals even on the basis of income gained outside the jurisdiction, including that received as salary from the federal government. The exaction is of a share in the expenses of the State government, the benefits of which the individual chooses to enjoy. Domicile and the intention of the individual regarding continuance in his abode are not decisive. *People ex rel. Ryan v. Lynch,* 262 N. Y. 1, 186 N. E. 28; *Soucy v. Knight,* 52 R. I. 405, 409, 161 A. 132.

Decisions of the Supreme Court of the United States, to which me must look for the law on the questions raised, appear to recognize the right of a State to tax the income of a resident though his domicile is in another State. "In our system of government the States have general dominion, and, saving, as restricted by particular provisions of the Federal Constitution, complete dominion over all persons, property and business transaction within their borders; they assume and perform the duty of preserving and protecting all such persons, property and business, and, in consequence, have the power normally pertaining to governments to resort to all reasonable forms of taxation in order to defray the governmental expenses. * * * As to residents it may, and does [under a statute being considered], exert its taxing power over their income from all sources, whether within or without the State, and it accords them a corresponding privilege of deducting their losses, wherever these accrue. As to nonresidents, the jurisdiction extends only to their property owned within the State and their business, trade or profession carried on therein, and the tax is only on such income as is derived from those sources." *Shaffer v. Carter,* 252 U. S. 37, 57, 40 S. Ct. 221, 224, 64 *L. Ed.* 445; *Lawrence v. State Tax Comm.,* 286 U. S. 276, 52 S. Ct. 556, 76 *L. Ed.* 1102, 87 *A. L. R.* 374; *People of State of New York ex rel. Cohn v. Graves,* 300 U. S. 308, 313, 57 S. Ct. 466, 81

*L. Ed.* 666, 108 *A. L. R.* 721. And see *Chestnut Securities Co. v. Oklahoma Tax Comm,* 125 F. 2d 571.

"Enjoyment of the privileges of residence in the State and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. * * * The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the State to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when received." *People of State of New York ex rel. Cohn v. Graves,* 300 U. S. 308, 313, 57 S. Ct. 466, 467, 81 *L. Ed.* 666; *Lawrence v. State Tax Comm,* 286 U. S. 276, 281, 52 S. Ct. 556, 76 *L. Ed.* 1102; *Graves v. People of State of New York ex rel. O'Keefe,* 306 U. S. 466, 480, 59 S. Ct. 595, 83 *L. Ed.* 927; *State of Wisconsin v. J. C. Penney Co.,* 311 U. S. 435, 444, 61 S. Ct. 246, 85 *L. Ed.* 267. And this court, following the decision in the O'Keefe case, has held that the salary of a resident assistant regional manager of the Home Owners' Loan Corporation, a federal instrumentality, was not exempted from the State income tax. *Gordy v. Prince,* 175 Md. 688, 7 A. 2d 611.

There seems to be no substance in an objection that taxation of the incomes of the present individuals may impose a burden on the exercise of federal governmental functions. "The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable." *O'Keefe Case* and others last cited. In none of the present appeals could it be said that there was any substantial interference; certainly there was no more than in the cases cited. And not only is there no federal statutory withdrawal of such individuals as these from liability for State income taxes, the Federal Public Salary Tax Act of 1939, Sec. 4, 5 U. S. C. A., Sec. 84a, expressly consents to the taxing of the compensation of federal officers and employees, "if such taxation does not discriminate against such officer or employee because of the source of such compensation." Both the Constitution as con-

strued in the O'Keefe case and earlier cases, and the Act of Congress quoted, prohibit a discriminatory tax, and we take the Public Salary Tax Act, which was enacted shortly after the decision in the O'Keefe case, to be no more than a legislative pronouncement of the same rule, expressly negativing any withdrawal from State taxation of the federal compensation to officers and employees.

The individual appellants, all maintained places of abode in the State during 1939, and all seem to have been resident to such degree that the purpose of the income tax as defined by the Supreme Court supports their inclusion among the taxpayers. The appellant Wood, after having lived in the District of Columbia three years, for an employment which appears to be as nearly permanent as public employment can be, in March, 1939, bought a house in Maryland and settled there with all appearances of permanency in his settlement. His situation presented no indication of transiency; and we think he was clearly within the meaning of the Maryland statute. Mr. Morgan also was settled in the State for a public employment of indefinite duration, and was within the meaning of the statute. He appears from the record to have been a federal officer. The appellant Tucker, although he may be considered to have retained his domicile in New Jersey, and to have had an intention to return to that State at a future time, then indefinite, was dwelling in Maryland meanwhile for a purpose that we do not regard as transient and for attending to which he might be regarded as a visitor or sojourner. He, too, had employment of indefinite duration, and we must regard him as maintaining a place of abode in the State, and taxable. The appellant, Colonel Lewis, assigned to active duty in Washington, undoubtedly maintained a place of abode in the State during 1939, as well as in 1938. His employment gave no assurance of permanency, but for all that appears might have been prolonged, and did in his opinion justify his taking a house in Maryland and enjoying the benefits of the State government.

All these appellants, indeed, shared during the taxable year in the benefits of the expenditures by the State for the various activities of its government. As the trial judge pointed out, the public schools were available to their children; they had the benefit of police protection for themselves, their families and their property; they could use the public roads daily; the courts were open for resort by them if necessary; and so with every other benefit and privilege provided by the State or it's agencies, such, for instance, as water supply and sewerage. They entered upon the enjoyment of these benefits, and should be liable to a share in the taxation levied to maintain them, in the absence of any distinguishing factor in their situation.

A principal contention of these appellants is that there was discrimination against them as federal officers or employees, contrary to the constitutional prohibition announced in the O'Keefe case and others, and the limitation included in the Federal Public Salary Act. From the construction of the Maryland constitutional clauses in *Gordy v. Dennis,* 176 Md. 106, 5 A. 2d 69, and *Calvert County Comrs. v. Monnett,* 164 Md. 101, 164 A. 155, it resulted that public officers of the State were exempted from payment of the income tax during their terms of office because the exaction was considered to amount to diminution of their salaries. But a difficulty in the way of the argument of discrimination against federal public officers is that the exemption which actually resulted was not so general as supposed. There is no showing in the record of these present cases that Maryland officers in comparable positions were exempted, and such information as the court has is that no similar officer in the State was. And we must take it to be so, as the burden of showing the discrimination charged is on the appellants charging it.

The Maryland director of the Department of Legislative Reference, whose position might be regarded as similar to that of Mr. Wood, is not a State officer included within the provisions of Article 3, Section 35, Const.,

that the salary or compensation of a public officer of the State shall not be increased or diminished during his term of office. He has no definite term of office. Acts of 1906, Chap. 565, Code, 1939, Art. 41, Secs. 101, 102. And his salary has, in fact, been increased from time to time. Acts of 1935, Chap. 92; 1937, Chap. 515; and 1939, Chap. 284. The members of the State Tax Commission, in whose positions Mr. Morgan seeks an analogy, did not, so far as we are informed, enjoy exemptions of their salaries, if, indeed, they are public officers. The deputies and assistants of the Attorney General of Maryland are without definite terms of employment, and their salaries were not exempted. And no officer of the National Guard of the State, even including the Adjutant General at the head of all of them, enjoyed such an exemption, because they were not regarded as within the class of public officers affected by the cited sections.

But on behalf of these individual appellants it is argued that a comparison of the effect of the Maryland constitutional sections on particular officers is not a proper test of the existence of discrimination, that the mere general exclusion of public officers of the State from the income tax of 1939 discriminated against all who might be classed as federal public officers, without regard to the State's particular applications of its law. It is an argument which would apply only to exempt those who are federal public officers. And we think it is not valid. If, as these appellants consider it, they and all more or less similar employees of the State are all public officers, then as the State construed its own constitution not all public officers in the State were exempted, and the basis of the charge of discrimination fails. The State's construction of its own Constitution is binding, in the absence of any conflict with the United States Constitution. If the State Constitution has provided that all public officers should be exemped except those holding positions similar to the positions of the appellants, there would be no charge of discrimination; and the actual provision, in the effect given it, is no more nor less. The discrimination can

only be in the effect. Discrimination in fact, to be found in a comparison of the situations of similar officers of the State, seems to us the only possible violation of the constitutional and statutory prohibition, and none is found.

The argument on the last appeal, in support of a deduction from the basis of Mr. Wood's tax of that portion of his income received before he came into the State, attacks the constitutionality of accepting under any of the various State statutes the test of residence during less than a year for computing the tax on a whole year's income. All the statutes to which our attention has been called accept that test. There is no contention that Mr. Wood paid the tax on the deducted portion to any other jurisdiction; payment of it, if found, would cause a deduction under the Maryland law. Code, 1939, Art. 81, Sec. 231. There is authority for the trial court's conclusion that the tax on that portion, even when not paid elsewhere, is not collectible. See notes, 126 *A. L. R.* 455, and 93 *A. L. R.* 1199; *Loevy v. Commissioner*, 245 Mass. 174, 139 N. E. 496; *Kennedy v. Commissioner*, 256 Mass. 426, 152 N. E. 747. But this court has reached a different conclusion. The tax is not directly an exaction of so much of a man's income as he has earned in the period of his residence. The income is one of the measures of the individual's liability for contribution. "A tax measured by the net income of residents is an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the State to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when he received." *People of State of New York ex rel. Cohn v. Graves*, 300 U. S. 308, 313, 57 S. Ct. 466, 467, 81 *L. Ed.* 666. It would not be contended that a day-to-day apportionment should be made so that those maintaining places of abode in the State 364 days in the year should have a deduction made of one day's income.

That would hardly be a practicable method. Not all incomes are earned periodically. And if not exactly a whole year is to be taken as the basis of computation, residence during some portion of the year must be arbitrarily selected for inclusion of taxpayers who are to share in the expenses of government. An abode for the larger part of the year, or even less, has been long and widely taken as a fair measure for that purpose. See *People ex rel. Ryan v. Lynch,* 262 N. Y. 1, 186 N. E. 28; and *Soucy v. Knight,* 52 R. I. 405, 161 A. 132; and *Attorney General v. Cootes,* 1817, 4 *Price* 183, 146 *Eng. Reprint* 433. That length of time gives assurance of a desirable degree of permanency, and the propriety of inclusion of the individual among the members of the taxable community; and the result seems especially fair when the amount of any payment made to another jurisdiction on the same income basis is to be deducted, so that double taxation is avoided. We find no constitutional prohibition of it.

Our conclusions are, then, that the orders of the trial court must be affirmed in the first four appeals, and that in the last the order must be reversed and the order of the State Tax Commission reinstated under the authority of the Code, 1939, Art. 5, Sec. 16.

> *Orders in appeals Nos. 16, 17, 18 and 19 affirmed with costs; order in appeal No. 20 reversed and the order of the State Tax Commission affirmed, with costs.*