### REILING v. LACY.

No. 4508.

United States District Court
D. Maryland.
July 11, 1950.

Herman T. Reiling, pro se.

Hall, Hammond, Attorney General of Maryland, and Harrison L. Winter, Assistant Attorney General, for defendant.

Before SOPER, Circuit Judge, WILLIAM C. COLEMAN, Chief Judge, and CHESNUT, District Judges.

WILLIAM C. COLEMAN, Chief Judge.

This is a suit brought by the plaintiff, a citizen of Illinois, against the defendant, Comptroller of the State of Maryland, to set aside as void an assessment of Maryland income taxes, including interest and penalty, for the years 1944 and 1945 made against the plaintiff upon his federal salary paid to him in the District of Columbia, while employed in the office of the chief counsel for the Bureau of Internal Revenue of the United States Government.

In his complaint, in addition to asking for a declaratory decree for exemption from the Maryland taxes as aforesaid and that the defendant be permanently enjoined from enforcing the assessment for the disputed taxes, plaintiff asks this Court to declare unconstitutional, as applied to his salary, the Maryland income tax law which imposes a tax on the income of every individual who for more than six months of the taxable year has maintained a place of abode within the State, regardless of whether he is domiciled within the State and of his intention as to continuance of his abode. The alleged grounds of invalidity are that the law violates (1) the due process and equal protection clauses of the Fourteenth Amendment; (2) clause 17 of Section 8 of Article I of the constitution by virtue of which it is claimed Congress has power to exercise exclusive jurisdiction with respect to plaintiff's employment within the District of Columbia and with respect to his salary derived from such employment and the taxing of it; (3) the Commerce Clause of the Constitution; and (4) Clause 1, Section 2 of Article IV of the Constitution which grants to citizens of each state all privileges and immunities of citizens of the several states.

The defendant filed a motion to dismiss the complaint on the ground (1) that the matter in controversy does not exceed the sum or value of $3,000 exclusive of interest and costs as required by Section 1332 of Title 28 U.S.C.A.; (2) that this Court also lacks jurisdiction by reason of Section 1341 of 28 U.S.C.A., which prohibits the District Courts from enjoining the imposition or collection of taxes by a state "where a plain, speedy and efficient remedy may be had in the courts of such State"; and (3) that the complaint fails to state a claim against the defendant upon which relief can be granted. To this motion plaintiff filed a motion to strike and for a default judgment on the ground that the defendant's motion to dismiss was not in proper form and without merit, and, therefore, should be stricken from the record, and that upon such being done, the defendant would be in default for want of an answer to the complaint, and judgment by default should thereupon be entered against him.

The suit being one to restrain an officer of the State of Maryland from en-

forcing a state statute, the plaintiff also moved for the convening of a statutory three-judge court pursuant to the provisions of 28 U.S.C.A. Sections 2281 and 2284. To this motion was coupled one for a summary judgment, with affidavit supporting the allegations of fact made in the complaint. It appearing that the suit required a three-judge court, pursuant to the provisions of the Code as aforesaid, such court was constituted, and since the allegations of fact made in the complaint are admitted by the motion to dismiss, the case was heard on the complaint and that motion, plaintiff's motion for summary judgment being superfluous, since it alleges no additional facts and raises no additional questions.

Summarized, the material facts thus admitted or not in dispute are the following: The plaintiff is a citizen of the State of Illinois with his domicile therein. The defendant is the duly elected and acting Comptroller of the Treasury of the State of Maryland, and is a citizen of that state and domiciled therein. The plaintiff was born in Illinois, has always retained his domicile there, where he is a registered voter, and has regularly voted in the elections in that state. He owns property there but also owns a dwelling in Chevy Chase, Maryland, where he now resides, as he did during the years 1944 and 1945. He maintains no bank account in Maryland but does maintain one in the District of Columbia. He has never had any intention of abandoning his domicile in or citizenship of the State of Illinois, but on the contrary expects to return to Illinois when he ceases to be employed by the Federal Government, such employment being of indefinite tenure.

Under date of April 19, 1949, defendant mailed to the plaintiff a notice of estimated assessment of Maryland income tax, including interest and penalty, in the total amount of $208.75, for the calendar years 1944 and 1945. The notice stated that this assessment would become final unless paid within 15 days from the date of the notice, and also, if not so paid, the defendant would enforce collection of the assessment by entering a tax lien against plaintiff's salary, wages or property. The assessment contained no information disclosing upon what basis the amount of the tax claimed to be due and owing was computed.

Upon receipt of this notice plaintiff requested of the defendant a computation showing the basis of the assessment and also an abatement of it on the ground that it was unconstitutional. Thereupon defendant furnished such computation which disclosed that the tax was assessed on account of the salary which the plaintiff received from the Federal Government for his services as aforesaid within the District of Columbia. This salary was regularly paid by United States Treasury check by disbursement officers regularly stationed within the District of Columbia, and these salary checks were actually received by the plaintiff within the District.

If the plaintiff pays the amount of the tax assessed, such cannot be recovered, because, pursuant to Maryland law, refund of state taxes is prohibited unless claim for same is filed within three years from their due date, and in the present case this period has expired, and, therefore, if the amount of the assessment is not paid it will become, by virtue of Maryland law, a lien upon all property, including all salary or other compensation for personal services due and owing to the plaintiff at the time the lien attaches.

On these facts there are thus presented two major questions: (1) Does this Court have jurisdiction to hear and determine the case on its merits? And, (2) Is the Maryland income tax law and the assessments thereunder made against the plaintiff, for the years here in question, unconstitutional as applied to the plaintiff, by reason of the fact that he, although residing in Maryland, is not a citizen thereof nor employed therein, nor does any part of his salary on which the Maryland income tax is assessed arise from any funds in Maryland?

Taking up the first of these questions, it is a three-fold one. It involves, first, the point whether the requisite amount in controversy exists pursuant to the provisions of Section 1332 of Title 28 U.S.C.A., the pertinent part of which provides that: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value

of $3,000 exclusive of interest and costs, and is between:

"(1) Citizens of different States; * *."

Second, there is involved the point whether jurisdiction can be sustained regardless of the amount in controversy, by virtue of Section 1343(3) of Title 28 U.S.C.A., one of the Civil Rights Acts, the pertinent part of which is: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *

"(3) To redress the deprivation, under color of any State law, * * * of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States * *."

Third, there is involved the point whether, even if this Court has jurisdiction under the aforementioned sections of Title 28, it is prohibited from exercising jurisdiction by virtue of Section 1341 of Title 28 U.S. C.A., commonly known as the Johnson Act, the pertinent part of which provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Taking up these three points in the order just given, first, as respects the amount in controversy, the complaint shows on its face that the total amount of the tax in issue is only $208.75, including penalties and interest. Since it is well settled that in tax cases of this kind the amount in dispute is the amount in controversy, jurisdiction cannot be sustained under Section 1332 of Title 28, upon which plaintiff relies, nor upon the companion Section 1331 which gives to the District Courts similar original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs and arises under the Constitution, laws or treaties of the United States. As was said in Healy v. Ratta, 292 U.S. 263, at page 269, 54 S.Ct. 700, at page 703, 78 L.Ed. 1248: "It is true that, where there is no method at law to test the legality of a tax without risk of incurring a penalty, the imminence of the penalty may involve such a threat of irreparable injury as to satisfy the requirements of equity jurisdiction. See Matthews v. Rodgers, 284 U.S. 521, 526, 52 S.Ct. 217, 76 L.Ed. 447. But the inability of a taxpayer to litigate the validity of a tax without risk of irreparable injury to his business, which is ground for invoking the equity powers of a federal court, affords no measure of the value of the matter in controversy. Atlantic Coast Line Ry. Co. v. Railroad Comm., supra [D.C., 281 F. 321]. The disputed tax is the matter in controversy, and its value, not that of the penalty or loss which payment of the tax would avoid, determines the jurisdiction. See Washington & Georgetown R. Co. v. District of Columbia, 146 U.S. 227, 13 S.Ct. 64, 36 L.Ed. 951; compare Elliott v. Empire Natural Gas Co., 8 Cir., 4 F.2d 493." See also Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Henneford v. Northern Pacific Ry. Co., 303 U.S. 17, 58 S.Ct. 415, 82 L.Ed. 619; Lucas v. City of Charlotte, 4 Cir., 86 F.2d 394, 109 A.L.R. 297.

The case of Berryman v. Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L.Ed. 225, upon which plaintiff relies, is clearly distinguishable on its facts. There the question was whether a contract of exemption from taxation had been impaired by subsequent state tax legislation, and the Court held that in such a case the amount in controversy is measured by the value of the right to be protected, and not by a mere isolated element such as a tax for a single year.

We turn to the second point, namely, whether, regardless of the amount in controversy, this Court has jurisdiction of the present suit by virtue of the provisions of Section 1343 of Title 28, since this is a suit brought to redress the alleged deprivation of civil rights. As heretofore explained under point one, Section 1331 of Title 28 requires that the jurisdictional amount be present in all civil actions arising "under the Constitution, laws or treaties of the United States." This Section, and Section 1343 of Title 28, are closely in-

terrelated. The question here presented was before Judge Chesnut in Norris v. Mayor and City Council of Baltimore, D.C., 78 F.Supp. 451 (not appealed) in a suit brought by a Negro resident of Baltimore for a declaratory judgment that he was entitled to be accepted as a student at the Maryland Institute in Baltimore on the same terms as other citizens and residents of Baltimore without regard to race or color and that, therefore, the Institute be enjoined from excluding him from such instruction because of his race or color. As alternate relief, the complaint prayed that the Mayor and City Council of Baltimore be enjoined from appropriating any public money or allocating public property or resources to the Institute if the Court should find that the Institute was a private corporation not under the restraints of the Federal Constitution.

In that case, just as here, jurisdiction of the Court was attacked because of plaintiff's failure to allege the amount of taxes which he would be required to pay and which would be appropriated by the City of Baltimore to the Institute. The plaintiff sought to maintain the jurisdiction of the District Court on the theory that the suit was one to redress the deprivation, under color of state law, of a right secured by the Constitution of the United States, that is to say, protection of property from illegal taxes and that, therefore, it was unnecessary for the plaintiff to allege or prove the amount of those taxes. In rejecting this contention and holding that the District Court had no jurisdiction to grant the alternative relief sought, since there was neither allegation nor proof of the requisite jurisdictional amount in controversy, Judge Chesnut said, 78 F.Supp. at page 462: "The prayer for alternative relief here does not present a case within the jurisdiction of this federal court. The plaintiff asserts federal jurisdiction for both branches of the case relying particularly on section 41, subsections (1) (a) and (14) of Title 28 U.S.C.A. Under section 41(1) (a) district courts are given jurisdiction of questions arising under the Constitution and laws of the United States only where the amount in controversy exceeds $3,000 exclusive of interest and costs; while under subsection 14 the jurisdictional amount is not required. The relief prayed in this case against the Institute is for the alleged deprivation by State action of a personal right of the equal protection of the laws. And, therefore, the jurisdiction under subsection 14 was properly invoked without averment or proof of the amount in controversy. Douglas v. City of Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 87 L.Ed. 1324; Hague v. C. I. O., 307 U.S. 496, 530, 59 S.Ct. 954, 83 L.Ed. 1423 (separate opinion of Justice Stone). But the prayer for alternative relief is essentially a taxpayer's suit to protect the plaintiff from being required to pay allegedly unlawful taxes and, therefore, of course, relating only to his property and not to a personal constitutional right. Federal jurisdiction of a suit of this nature falls under subsection (1) (a) of section 41 of Title 28 which requires a showing that the amount in controversy exceeds $3,000. The complaint avers that the plaintiff is a taxpayer and the answer of the City admits this; but it is not alleged in the pleadings that the amount in controversy (that is the tax paid or to be paid by the plaintiff) exceeds $3,000; nor is there any proof in the case of any amount of taxes paid or to be paid by the plaintiff, by reason of the alleged invalid appropriation by the City. The charge that the appropriations are ultra vires obviously presents not a federal but only a State question. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497; Owensboro Water Works Co. v. City of Owensboro, 200 U.S. 38, 47, 26 S.Ct. 249, 50 L.Ed. 361; Reese v. Holm, D.C., 31 F. Supp. 435. The only other ground assigned for federal jurisdiction is lack of due process under the 14th Amendment. But with respect to taxpayers' suits or where property interests are involved in such a case, there must be a showing of the requisite amount in controversy. Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883; Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374; Murphy v. Puget Sound Mortg. Co., D.C., 31 F.Supp. 318; Risley v. City of Utica, C.C.N.Y., 168 F. 737; Colvin v. City of Jacksonville, 158 U.S. 456, 460, 15 S.Ct. 866, 39 L.Ed. 1053;

Rose Federal Jurisdiction and Procedure, 4th Ed. s. 218, pp. 219, 220; Dobie on Federal Procedure, § 72, pp. 253–255."

To the same effect is the separate concurring opinion of Mr. Justice (later Chief Justice) Stone in Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 cited in that part of Judge Chesnut's opinion above quoted; and also Holt v. Indiana Manufacturing Company, 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374, as well as the numerous other cases, cited by Judge Chesnut.

We now turn to the third point respecting the question of jurisdiction, namely, whether apart from Sections 1331, 1332 and 1343(3) of Title 28, which we have just considered, jurisdiction of this Court to hear the present case is prohibited by Section 1341 of Title 28 which, as we have seen, deprives the District Courts of jurisdiction to enjoin, suspend or restrain the assessment of state taxes where a plain, speedy and efficient remedy may be had in the State Courts.

■ It is conceded in the present case that, as plaintiff claims, the procedure afforded by Maryland law for contesting the validity of a tax is now unavailable to him because more than three years have elapsed since the date on which his income tax returns for the years here in question should have been filed. But plaintiff goes further and claims that, although the Maryland income tax law provides for notice and right of appeal to the State Tax Commission, he has not been given any right of appeal or any other reasonable opportunity to be heard. However, this is not in fact true. The plaintiff did have both a right of review and a right of appeal to the State tribunals but failed to take advantage of these rights.

The provisions of the Maryland law pertinent to this question may be summarized as follows: The tax assessment of which plaintiff complains was made under the provisions of Article 81, Annotated Code of Maryland, 1947 Supplement. Section 244 of that Article authorizes the Comptroller of the Treasury, when a return is not filed as required, to make an estimate of the income of the taxpayer and of the amount of the tax due from any information in his possession, to assess the tax at not more than twice the amount so estimated and to require payment of the taxes, penalties and interest due from the taxpayer as thus assessed. This section was amended in 1949 (but the amendment was not effective until April 29, 1949, that is, after the delinquency notice was sent the present plaintiff) declaring assessments made and remaining unpaid as aforesaid, final and irrevocable. Chap. 480, Act of 1949. However, Section 247 of Article 81 affords to any taxpayer feeling aggrieved by an assessment, the right to appeal to the State Tax Commission within thirty days from the date of notice of the assessment; and in the event such an appeal is taken, the Commission is directed to assign, within a reasonable time, a date for public hearing and to sustain the original or to make a new assessment.

This section further provides that nothing therein shall prevent the taxpayer from appealing the findings of the State Tax Commission in the manner provided by law for appeals from that body and incorporates in the income tax law the provisions relating to such appeals. Section 194 of Article 81 (which was amended in relatively minor respects by Chapter 413 of the Acts of 1949, effective June 1, 1949) defines such right of appeal. It provides that the taxpayer has thirty days from the date of the Commission's decision to appeal to the Circuit Court of the county of his residence on questions of law, and that Court is authorized to remand the case to the Commission for further proceedings or to affirm the Commission. From the decision of the Circuit Court the taxpayer has a further right of appeal to the Court of Appeals of Maryland within thirty days from the Circuit Court's decision. Also, in accordance with the provisions of Section 1257(2) of Title 28 U.S.C.A., if the decision of the Court of Appeals of Maryland should be adverse to the taxpayer on any question of Federal law, he could appeal to the Supreme Court of the United States.

■ It is thus clear from the foregoing that there was available to the present plaintiff in the courts of Maryland a plain, speedy and efficient remedy within the

meaning of Section 1341 of Title 28. See Wood v. Tawes, 181 Md. 155, 28 A.2d 850, certiorari denied 318 U.S. 788, 63 S.Ct. 982, 87 L.Ed. 1154; Matthews v. Rodgers, 287 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447. True, the Matthews case was decided in 1931, prior to the enactment of Section 1341 of Title 28, now commonly known as the Johnson Act. However, in the Matthews case, the same principle later embodied in the Johnson Act, was applied. In that case suit was brought to enjoin the collection of a Mississippi privilege tax imposed upon persons engaged in the business of buying and selling cotton for their own account, on the ground that it constituted an unconstitutional burden upon interstate commerce. Under this State law, it was permissible to file suit for refund of taxes and to assert, as a basis for such suit, the unconstitutionality of the statute under which the taxes had been collected. The Supreme Court held that the suit should be dismissed because the taxpayer had a plain, speedy and efficient remedy at law, and that under the familiar principle of equity there was, therefore, no ground for invoking equitable relief, relying upon the provisions of the judicial code to the effect that suits in equity should not be sustained where a plain, adequate and complete remedy could be had at law. Then, six years later, came the enactment of Section 1341,—the Johnson Act. In spite of its clear, definite provision that "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State", the plaintiff in the present suit contends that these words apply only to suits for injunction and not to suits brought, as is the present one, under the Declaratory Judgment Act, Sections 2201 and 2202 of Title 28, U.S.C.A. It is to be noted, however, that injunctive relief, as well as a declaratory decree, is here being sought by plaintiff. Therefore, in so far as injunctive relief is concerned, it is conceded to be within the terms of Section 1341. However, we believe that that section is also applicable to suits under the Declaratory Judgment Act.

In Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 1072, 87 L.Ed. 1407, plaintiff sought a declaratory judgment to the effect that the Louisiana Unemployment Compensation Law was void as applied to its employees, on the ground that they were engaged in maritime employment and, therefore, beyond the taxing and regulatory jurisdiction of the State. Both the District Court and the Circuit Court of Appeals dismissed the complaint on the ground that it showed no substantial basis for relief. In granting certiorari, the Supreme Court limited the question before it to "whether the declaratory judgment procedure can be appropriately used in this case where the complaint seeks a judgment against a state officer to prevent enforcement of a state statute".

In affirming the judgment of dismissal, which it did solely on the ground that in the appropriate exercise of the Court's jurisdiction, relief by way of declaratory judgment should have been denied without consideration of the merits, the Supreme Court reviewed and reiterated the principle which had long been established by it that, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, they will not ordinarily restrain State officers from collecting State taxes where State law affords an adequate remedy to the taxpayer. Then the Court went on to discuss the Johnson Act, and said, 319 U.S. at pages 298 to 300, 63 S.Ct. at page 1073: "Congress recognized and gave sanction to this practice of federal equity courts by the Act of August 21, 1937, 50 Stat. 738, enacted as an amendment to Section 24 of the Judicial Code, 28 U.S.C. § 41(1), 28 U.S.C.A. § 41(1). This provides that 'no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State.' The earlier refusal of federal courts of equity to interfere with the collection of state taxes unless the threatened injury to the taxpayer is one for which the state courts

afford no adequate remedy, and the confirmation of that practice by Congress, have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes.

"It is true that the Act of Congress speaks only of suits 'to enjoin, suspend, or restrain the assessment, levy, or collection of any tax' imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. *But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.*

"The statutory authority to render declaratory judgments permits federal courts by a new form of procedure to exercise the jurisdiction to decide cases or controversies, both at law and in equity, which the Judiciary Acts had already conferred. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. Thus the Federal Declaratory Judgments Act (Act of June 14, 1934, 48 Stat. 955, as amended, 28 U.S.C. § 400, 28 U.S.C.A. § 400) provides in subdivision 1 that a declaration of rights may be awarded although no further relief be asked, and in subdivision 2 that 'further relief based on a declaratory judgment or decree may be granted whenever necessary or proper'." (Emphasis supplied.)

Three years later, in 1946, in Township of Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358, the Supreme Court differentiated the facts there presented from those in the Great Lakes Dredge and Dock Company case supra, and held that there was such uncertainty surrounding the adequacy of the state remedy as to justify the District Court in retaining jurisdiction of the cause and rendering judgment for the taxpayer. However, in so doing it reaffirmed the principle announced in the Great Lakes Dredge and Dock Company case supra and said, 326 U.S. at pages 622 to 629, 66 S.Ct. at page 448: "Sec. 267 of the Judicial Code, 28 U.S.C. § 384, 28 U.S.C.A. § 384, provides that suits in equity shall not be sustained in the federal courts 'in any case where a plain, adequate, and complete remedy may be had at law.' That principle has long been recognized as having 'peculiar force' in cases where the federal courts were asked to enjoin the collection of a state tax. Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, and cases cited. 'The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.' Id., 284 U.S. page 525, 52 S.Ct. page 219. Where the remedy at law is 'plain, adequate, and complete', it is the one which must be pursued even for the protection of any federal right. That practice of the federal equity courts was given further recognition and sanction by Congress in the Johnson Act, 48 Stat. 775, as amended, 50 Stat. 738, § 24(1) of the Judicial Code, 28 U.S.C. § 41(1), 28 U.S.C.A. § 41(1), which provides that 'no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State.' *It was against that background that we held in* Great Lakes Dredge & Dock Co. v. Huffman, supra [319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407], *that the policy which led federal courts of equity to refrain from enjoining the collection of allegedly unlawful state taxes should likewise govern the exercise of their discretion in withholding relief under the Declaratory Judgment Act.*

"The Circuit Court of Appeals fully recognized the principle of the Huffman case, but concluded that the state procedure was not 'speedy, efficient or adequate' [3 Cir., 149 F.2d 617, 620] to protect the federal right against discriminatory state taxation. * * *

" * * * In the present case it appears that respondent's opportunity to appeal to the State Board of Tax Appeals had expired even before the District Court ruled on the motion to dismiss. And it is not clear that today respondent has open any adequate remedy in the New Jersey courts for challenging the assessments on local law grounds. * * *

*       *       *       *       *       *

" * * * Though the availability of a state remedy on the local law question be assumed to exist, so much uncertainty surrounds the New Jersey remedy to protect the taxpayer's federal right that a refusal to dismiss the bill was a proper exercise of discretion. Thus however the case may be viewed, the exceptional circumstances which we have noted take it out of the general rule of Great Lakes Dredge & Dock Co. v. Huffman, supra. The District Court, therefore, properly proceeded to decide the case on the merits. * * *."* (Emphasis supplied.)

In support of his contention that the facts in the present case require a declaratory judgment in his favor, plaintiff cites such decisions of the Court of Appeals for the Fourth Circuit as Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321; Maryland Casualty Co. v. Boyle Const. Co., 123 F.2d 558 and Piedmont Fire Ins. Co. v. Aaron, 138 F.2d 732. But we construe them otherwise.

Finding as we do, for the reasons just given, that this Court is without jurisdiction to hear and determine the present case on its merits and that, therefore, the complaint must be dismissed, we are not called upon to decide the second basic question raised by the complaint, namely, Is the Maryland Income Tax Law unconstitutional as applied to taxpayers in the plaintiff's status? However, since this question has been fully considered in connection with four federal em-ployees on facts very similar to those in the present case, and has been answered in the negative by the Maryland Court of Appeals in Wood v. Tawes, 181 Md. 155, 28 A.2d 850, certiorari denied, 318 U.S. 788, 63 S.Ct. 982, 87 L.Ed. 1154, in an opinion which we believe to be entirely sound, we believe it appropriate to say so. That decision held constitutional the same Maryland statute which the plaintiff in the present case is contesting. The Court found that the Maryland statute violated neither the constitutional prohibition against discrimination with respect to salaries of federal employees announced in such cases as Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, nor the limitation included in the Federal Public Salary Act, 5 U.S.C.A. Sec. 84a, nor was it unconstitutional as double taxation.

The plaintiff in the present case raises two additional points which were not referred to in the Court's decision in Wood v. Tawes, supra. These points are (1) that under Maryland law, corporations are taxed only on income derived from sources within Maryland, while plaintiff has been taxed, because of his Maryland residence, on income from all sources; and (2) that under the provisions of Sections 231 and 232 of Article 81 of the Maryland Code, certain taxpayers who must pay income taxes to other States are granted credit against their Maryland income taxes for taxes so paid, whereas the present plaintiff, since he is not taxed by his domiciliary State of Illinois, can receive no such credit. Suffice it to say that as respects the first point, it is well established that different treatment for tax purposes of the income of corporations and the income of individuals is not subject to constitutional objection. See Lawrence v. State Tax Commission, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374; Ft. Smith Lumber Company v. State of Arkansas ex rel. Arbuckle, 251 U.S. 532, 40 S.Ct. 304, 64 L.Ed. 396; Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. As to the second point, the purpose of the provisions of the Maryland Code to which plaintiff refers is to avoid double

taxation, even though such is not unconstitutional. State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L. Ed. 1358, 139 A.L.R. 1436; Ft. Smith Lumber Co. v. State of Arkansas ex rel. Arbuckle, supra. These provisions were upheld in Wood v. Tawes, supra.

Also, since plaintiff relies to a great extent upon 'Colgate v. Harvey, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299, 102 A.L.R. 54, the facts in which we believe are clearly distinguishable from those before us, we deem it appropriate to analyze that decision. There, the validity of a Vermont taxing statute was challenged on three grounds: (1) that by imposing a tax upon dividends earned outside the state of Vermont, while exempting from the tax dividends earned within the State, it thereby denied petitioner the equal protection of the laws in violation of the Fourteenth Amendment; (2) that by discrimination in favor of money loaned within the State as against money loaned outside the State it likewise violated the Fourteenth Amendment; and (3) by denying petitioner an $800 exemption while giving it to other persons whose situation differed only in that they had no income from business, it also denied petitioner the equal protection of the laws guaranteed by the Fourteenth Amendment. It was also claimed that in each of these particulars the Act abridged the privileges and immunities of petitioner as a United States citizen in contravention of the same Amendment.

The Supreme Court held that this Vermont taxing act was valid in respect of the first and third points, but invalid in respect of the second. On the first point, the Court said, 296 U.S. at page 420, 56 S.Ct. at page 254: "The theory upon which the tax is laid upon dividends realized from out-of-state business while leaving dividends realized from domestic business untaxed, is that the 2 per cent. franchise tax, especially with the property tax added, has the effect of indirectly imposing a tax burden upon the latter measurably equivalent to that imposed directly upon the former. Thus, the tendency of the plan is to avoid taxing twice what is, in effect, the same thing. And conceding the power of the state to impose double or even multiple taxation, legislation which is calculated to avoid that undesirable result certainly cannot be condemned as arbitrary. * * * If the evident intent and general operation of the tax legislation is to adjust the burden with a fair and reasonable degree of equality, the constitutional requirement is satisfied. We think the provision now under consideration meets this test."

On the second point, however, the Court found that on the face of the statute the discrimination was purely arbitrary, since it was based entirely upon a fortuitous circumstance—the place where the loan is made—which has no substantial or fair relation to the object of the act, namely, the raising of revenue. The Court said, 296 U.S. 404, at page 425, 56 S.Ct. at page 257: "If there be circumstances which will justify the exemption of any income derived from money loaned within the state while taxing the income from that loaned outside, it is for the state Legislature to point them out and limit the exemption accordingly. To import any such circumstances into the present situation is to indulge in pure speculation."

On the third and last point, the 'Court said, 296 U.S. 404, at page 436, 56 S.Ct. at page 261: "The question of equal protection must be decided in respect of the general classification rather than by the chance incidence of the tax in particular instances or with respect to particular taxpayers. 'And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law.' Maxwell v. Bugbee, 250 U.S. 525, 543, 40 S.Ct. 2, 7, 63 L.Ed. 1124. 'The operation of a general rule will seldom be the same for every one. If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict.' Fox v. Standard Oil Co., 294 U.S. 87, 102, 55 S.Ct. 333, 339, 79 L.Ed. 780. * * *"

Also, it is clear that such decisions as Treichler v. Wisconsin, 338 U.S. 251, 70 S. Ct. 1, and Frick v. Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R.

316, which condemn, as violating the due process clause of the Fourteenth Amendment, state taxes on property rated and measured in part by tangible property, the situs of which is outside the taxing state, are not in point.

For the reasons given, we find no merit in any of the contentions made by plaintiff and therefore defendant's motion must be granted, and the complaint dismissed.