# MARY BRAFMAN

## *vs.*

## BENJAMIN BRAFMAN et al., Administrators.

*Place of Residence—Evidence—Administration Proceedings.*

One's residence, as determining jurisdiction to grant letters of administration upon his estate, means his fixed or permanent home or domicile, as distinguished from a temporary abode.

p. 414

One's domicile at the time of his death is the proper jurisdiction in which to obtain letters testamentary or of administration upon his estate.

p. 414

One seeking to prove a change in a known, fixed and established residence, must show an actual removal to another habitation, and that the person removing did so with the intention of remaining there at least for an unlimited time.

p. 414

Evidence that decedent went in summer to Atlantic City, where he had a bank account, that he kept securities in his trunk while there, and that he had spoken of that place as his home, *held* not to show that he had abandoned his residence in Baltimore, where he had lived and worked until his health failed, and where he thereafter stayed with his brother or sister, or at a hotel, when not at Atlantic City or at a southern resort, it further appearing that, in making out ownership certificates for the purpose of the internal revenue tax, he gave Baltimore as his residence.

pp. 415-417

*Decided January 9th, 1924.*

Appeal from the Orphans' Court of Baltimore City.

Petition by Mary Brafman for revocation of letters of administration granted to Benjamin Brafman and Julius Brafman on the estate of Jacob Brafman, deceased. From an order dismissing the petition, petitioner appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Elizabeth F. Vilkomerson,* for the appellant.

*Julius H. Wyman* and *Sidney A. Goodman,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City dismissing the petition of the appellant, Mary Brafman, in which she asked that the letters of administration granted out of said court to the appellees upon the personal estate of her deceased husband, Jacob Brafman, who died in Atlantic City on August 28th, 1922, be revoked and the appellees be enjoined "from making any disposition of the funds held by them in said estate."

The question presented by this appeal is, Did the Orphans' Court of Baltimore City have jurisdiction to grant letters of administration upon the estate of Jacob Brafman? And its determination depends solely upon the question whether he, at the time of his death, was a resident of the City of Baltimore.

The word "residence" as here used means the fixed or permanent home or domicile of the deceased, as distinguished from a temporary abode. *Whiting* v. *Shipley,* 127 Md. 117. A domicile, as said by the Supreme Court in *Mitchell* v. *United States,* 21 Wallace, 138, "is a residence at a particular place accompanied with positive or presumptive proof of the intention to remain there for an unlimited time"; and this Court said in *Thomas* v. *Warner,* 83 Md. 120, "the idea of residence is compounded of fact and intention; to effect a change of it, there must be an actual removal to another habitation, with an intention of remaining there"; and where there is an attempt to show that there has been a change in a known, fixed and established residence, it is incumbent upon the party attempting to establish such fact to show (1) an

actual removal to another habitation, and (2) that the person removing did so with the intention of remaining there, at least for an unlimited time. *Pope* v. *Williams,* 98 Md. 59.

A decedent's domicile at the time of his death is the proper jurisdiction in which to obtain letters testamentary or of administration upon his estate. 11 *R. C. L.* 65.

The evidence in this case discloses that Jacob Brafman was born and reared in the City of Baltimore and, after reaching his majority, he lived and worked in that city but, some years before his death, his health became impaired and, in consequence thereof, he could do little or no work. While in this condition, he visited different resorts along the Atlantic coast. In the summer he went to Atlantic City, and in winter to one or more of the resorts in Georgia and Florida. When not at these places, he lived in one of the smaller hotels in the City of Baltimore, or with his sister or brother.

In the summer of 1918, while at Atlantic City, he met the plaintiff, a trained nurse, whose home was in Nanticoke, Pennsylvania. In the following November they were married in Philadelphia. In his application for the marriage license, he stated that his residence at that time was in Baltimore City, Maryland. After they were married, they went to Atlantic City, where they lived in hotels and apartment houses as man and wife for about six months, when they separated. She went to New York, where she resumed her work as nurse and he remained, for a while at least, in Atlantic City. They never again lived together, although Brafman wrote to her a number of times asking her to return to him. He also appealed to her brother and one of her friends to use their influence with her in an effort to have her come back to him, but it seems their efforts were unavailing. He, as he did before his marriage, spent several months of the winter, in each of the succeeding years of his life, in the south, and his summers in Atlantic City. The other times he would be in the City of Baltimore, with his sister or brother, or at one of the hotels.

In August, 1922, he was taken from the hotel, at which he was stopping, to a hospital in that city, where he died on the 28th of the same month. He had at the time of his death about $13,000. His business affairs, which consisted altogether of keeping his small estate invested in securities, on the interest from which he chiefly relied for his maintenance and support, were looked after largely by his brother Benjamin, one of the appellees, in whose care, it would seem from the evidence, his securities and investments were kept in Baltimore City.

He had, at the time of his death, and for a number of years prior thereto, an account in one of the financial institutions of Baltimore City, though he likewise had a banking account not only in Atlantic City, but also in one or more of the resorts visited by him in the south.

It is also disclosed by the record that he, when making out ownership certificates, in compliance with the United States internal revenue regulations, gave as his residence, Baltimore, Maryland.

Upon the application of the appellees, letters of administration upon the decedent's estate were granted to them by the Orphans' Court of Baltimore City.

In February, 1923, the appellant having learned of her husband's death, which occurred in the preceding August, filed her first petition in the Orphans' Court of Baltimore City, in which, among other things, she alleged that letters of administration had been fraudulently obtained by the appellees, inasmuch as they had knowingly failed to disclose their brother's marriage to the appellant, which was done, as she alleged, for the purpose of defrauding her out of her interest in her husband's estate. She also complained therein that letters were issued without notice to her, and that she was thereby deprived of her legal right to administer upon the estate of her deceased husband; and asked that the letters of administration be revoked and letters granted to her in lieu thereof. In this petition no mention was made of the fact that Jacob Brafman was, at the time of his death, a resident

of Atlantic City, N. J. But in a petition subsequently filed on May 16th, she, for the first time, raised the question of the jurisdiction of the Orphans' Court of Baltimore City to grant said letters of administration, alleging therein that the decedent was at the time of his death, and for more than four years prior thereto, a resident of Atlantic City, N. J., and upon such ground asked for a revocation of the letters issued to the appellees.

It is true the appellant offered evidence showing that Brafman kept an account in one of the banks in Atlantic City; that in his trunk he had a "strong box" in which he, at times, kept some of his securities, from which he had been seen to cut the coupons. She also produced witnesses who testified to conversations had with the decedent in which he referred to Atlantic City as his home, but this evidence, we think, was insufficient to show that Jacob Brafman had abandoned his established residence in Baltimore and had taken up his residents or domicile in Atlantic City, N. J., when weighed against the facts we have stated, which strongly indicate that it was not his intention to abandon his home or residence in Baltimore, and that he still regarded and recognized Baltimore City as his residence.

The order of the court appealed from, dismissing the appellant's petition, was, we think, properly passed, and we will therefore affirm said order.

*Order of court affirmed, with costs to the appellees.*