HARRY W. SHENTON, Executor *v.* S. REESE
ABBOTT

[No. 17, October Term, 1940.]

*Decided October 31st, 1940.*

*William D. Macmillan,* with whom were *William J. McWilliams, William A. Fisher, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for the appellant.

*George B. Woelfel,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City, revoking the probate of the will of James Edward Abbott, deceased, and also the letters testamentary of Harry W. Shenton, appellant, on the ground of lack of jurisdiction. The issue is whether the testator had abandoned his domicile of origin in Anne Arundel County and acquired domicile of choice in Baltimore City.

The record shows that the testator was born in Annapolis. He became a colonel in the United States Army, but after he retired from the service he returned to his home in Annapolis. For eleven years he served by ap-

pointment of Governor Ritchie as a member of the Maryland Veterans' Commission; and when he was personally in charge of its office in Baltimore, from 1932 to the middle of 1935, he was there "practically every day, passing on applications for relief." In 1934, then at the age of sixty-eight, he gave up his apartment in Annapolis, and took a furnished apartment in the Latrobe Apartments in Baltimore under a lease for the year 1935. For about a month of that year he was a patient in the Fort Howard Hospital. He later gave up his business office in Annapolis. Among the places where he stayed from 1936 to 1939 were the Latrobe, the Army and Navy Hospital at Hot Springs, Arkansas, the Naval Hospital in Annapolis, the Walter Reed Hospital in Washington, the University Club of Baltimore, the Johns Hopkins Hospital, a boarding house in Annapolis, a brother's home on the Severn River, a sister's home in Washington, the Army and Navy Club in Annapolis, a summer resort on the Eastern Shore, the Hopkins Apartments in Baltimore, the Jefferson Apartments in Baltimore, the Army and Navy Club in Washington, and the Washington Sanitarium.

On July 22nd, 1939, while a patient at the Washington Sanitarium, Colonel Abbott disclosed to the appellant his plans for matrimony and outlined the provisions for his will. On the following day he returned to Baltimore and lodged in the Hotel Rennert. On July 26th he was married in a room of the hotel. On July 27th he executed his will, calling himself "James Edward Abbott, of the State of Maryland." The couple stayed at the Rennert until October, when they left for Florida. On December 3rd, after being away from Anne Arundel County for about five years except on visits, Colonel Abbott died in Florida, and was buried in Arlington National Cemetery.

According to the requirement of the Maryland statute, whenever any person shall die intestate, leaving personal property in this state, letters of administration shall be granted in the county where he had his "mansion house or residence." Code, art. 93, sec. 15. The statute also

provides that any will may be proved in any county wherein letters testamentary or of administration may be granted. Code, art. 93, sec. 356. In the present case the Register of Wills for Baltimore City took the probate of the will and granted the letters in the recess of the Orphans' Court. Code, art. 93, sec. 353. The word "residence" in the testamentary statute denotes more than a place of abode; we interpret it to mean the domicile of the deceased. *Whiting v. Shipley,* 127 Md. 113, 96 A. 285; *Pattison v. Firor,* 146 Md. 243, 126 A. 109. A person's domicile is the place with which he has a settled connection for legal purposes, either because his home is there or because that place is assigned to him by the law. It is well defined as that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. While a person may have several residences, he can have only one domicile at a time. *Croop v. Walton,* 199 Ind. 262, 157 N. E. 275; *Restatement of Conflict of Laws,* secs. 9, 11. This court holds that the orphans court of one county has no authority to probate the will of a testator who had his domicile in another county. *Shultz v. Houck,* 29 Md. 24, 27; *Brafman v. Brafman,* 144 Md. 413, 415, 125 A. 161.

It is a fundamental rule that, in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention of remaining there permanently or at least for an unlimited time. But a change of residence, to enable a person to perform the duties of a civil office, whether elective or appointive, does not of itself constitute a change of domicile. No temporary residence, whether for the purposes of business, health, or pleasure, occasions a change of domicile. Even though a person may be absent from his domicile for many years, and may return only at long intervals, nevertheless he retains his domicile if he does not acquire a domicile elsewhere. *Wagner v. Scurlock,* 166 Md. 284, 170 A. 539; *Mitchell v. United States,* 21 Wall. 350,

22 L. Ed. 584, 588; 1 *Beale, Conflict of Laws,* 142, 163, 167, 171; 17 *Am. Jur., Domicile,* secs. 16, 18. In an opinion in the United States Supreme Court Justices Holmes declared: "The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere. * * * The very meaning of domicile is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined." *Williams v. Osenton,* 232 U. S. 619, 34 S. Ct. 442, 443, 58 L. Ed. 758.

Colonel Abbott, according to the records of the Supervisors of Elections, was a qualified voter in Anne Arundel County until the time of his death, and voted there in the primary and the general election of 1938. The official records of supervisors of elections showing where a person registered or voted are admissible in evidence on the question of his place of domicile. *Wagner v. Scurlock,* 166 Md. 284, 170 A. 539; *Town of Enfield v. Town of Ellington,* 67 Conn. 459, 34 A. 818. The Constitution of Maryland prescribes that a qualified voter shall be entitled to vote at elections held in this state "in the ward or election district in which he resides." Md. Const. art. 1, sec. 1. The object of the framers of the Constitution, in prescribing residence as a qualification for the exercise of the elective franchise, was not only to identify the voters and to prevent fraud, but also to assure that each voter would become in fact a member of his community and take an interest in its government. *Shaeffer v. Gilbert,* 73 Md. 66, 70, 20 A. 434. The legislature has added strength to such evidence by enacting a statute providing for the imprisonment of any person who shall vote in any election precinct without having a legal right to vote therein. Code, art. 33, sec. 134; 17 *Am. Jur., Domicile,* sec. 93. While evidence of the exercise of the right of suffrage in a certain place is not conclusive, as a general rule, in determining the question of domicile, and may sometimes be of slight importance when over-balanced by other circumstances, such evidence should

ordinarily have considerable weight, because it is very strong evidence of intention. *Wagner v. Scurlock,* 166 Md. 284, 170 A. 539.

On July 24th, 1939, when Mrs. Caroline Abbott, now the testator's widow, applied in Baltimore for their marriage license, she swore that Annapolis was the residence of the groom. When questioned on the subject in the Orphans' Court, she declared that she had made oath to that address because Colonel Abbott had a post office box in Annapolis and their mail could be sent there wherever they might be. However, her affidavit adds to the preponderance of the evidence.

In September, 1939, Colonel Abbott transferred nine pieces of real estate to himself and wife as tenants by the entireties. The deeds described him as "of Anne Arundel County." The appellant, who had prepared the deeds, testified that he had inserted that description merely from habit and also to identify him. While a declaration in a deed, mortgage, lease, or other instrument, that the residence of a party is in a certain county may be controlled by other facts in the case, such a declaration is *prima facie* evidence that he resided in that county, and constitutes some evidence of domicile. *Warner v. Hardy's Lessee,* 6 Md. 525; *Croop v. Walton,* 199 Ind. 262, 157 N. E. 275; 17 *Am. Jur., Domicile,* sec. 91.

On October 6th, 1939, several days before leaving for Florida, the Abbotts bought a house in Annapolis for the sum of $7500. Mrs. Abbott stated that the purchase was made primarily as an investment, but admitted that she saw it before it was purchased, and that they intended to live in the house "only as a possibility," depending upon the Colonel's health. A change of residence for the purpose of benefiting one's health does not usually effect a change of domicile. Even the knowledge that one will never be able to return home on account of his illness does not necessarily establish a change of domicile. Of course, if a person has actually moved to a new abode, with the intention of remaining there

for an indefinite time, and establishing it as a place of fixed present domicile, that place is to be deemed his domicile, notwithstanding he may entertain a floating intention to return to his former domicile at some future time. *Ringgold v. Barley,* 5 Md. 186, 193; *Felker v. Henderson,* 78 N. H. 509, 102 A. 623, 624; 17 *Am. Jur., Domicile,* sec. 31. But that is not the case here. When Mrs. Abbott was asked whether the Colonel had intended to stay in Florida permanently, she replied: "He did not; he said he might." On the question whether he had gone to Florida for his health, she said: "And if he liked it, he would stay. We had no definite plans." The determination of the place of domicile depends upon the circumstances of each case. *Dupuy v. Wurtz,* 53 N. Y. 556, 567; 1 *Beale, Conflict of Laws,* 173; *Croop v. Walton,* 199 Ind. 262, 157 N. E. 375; 17 *Am. Jur., Domicile,* secs. 30, 31.

One witness testified that he had heard Colonel Abbott declare that he had been annoyed and humiliated by his relatives, and that he never wanted to go back to Annapolis. But the intention of an individual as to his place of domicile, as stated by the United States Supreme Court, "may be shown more satisfactorily by acts than declarations." *Shelton v. Tiffin,* 6 How. 163, 185, 12 L. Ed. 387, 397. When Colonel Abbott gave up his apartment and later his office in Annapolis, truckloads of his furniture were placed in storage in Annapolis and at Ferry Farms, where he had "a most magnificent place" and where, according to a friend, he planned to live "if he ever settled down." Later his radios, typewriters, and desks were moved back from Baltimore to Annapolis. At no time did he own a home in Baltimore or anywhere else outside of his native county, but stayed in rooms already furnished. He was a dealer in real estate and employed an agent in Annapolis to attend to it. In 1937, he bought "a long string of houses." He had mortgages on Anne Arundel County real estate in the amount of $20,000, which were assigned to himself and wife. He

kept some money in the Annapolis banks. At one time he considered plans for the erection of a house for a friend. He continued as a member of the Elks Club of Annapolis until his death, never transferring his membership to the lodge of any other city. In his will he gave bequests to the Annapolis Lodge, the Presbyterian Church, and the Emergency Hospital of Annapolis.

The appellant relied upon the fact that a roster of veterans of the 42nd Regiment of Infantry and a roster of active and retired officers in Baltimore and vicinity listed Colonel Abbott's address as the Jefferson Apartments. It was also shown that Baltimore was given as his address on the list of passengers on the steamship on which he took a voyage in 1936 to the West Indies. It is obvious that the court in considering the preponderance of the evidence, cannot place much value upon such lists, printed primarily for temporary convenience, when compared with the affidavits and acknowledgments and the circumstances in the case. In addition, in order to establish a change of domicile, it must be shown not only that a new residence was acquired with the intention of remaining there, but also an abandonment of the old domicile so permanent as to exclude the existence of an intention to return to the former place. There must be both the *animus manendi* and the *animus non revertendi.*

The preponderance of the evidence shows that the testator had not abandoned his domicile of origin. The Orphans' Court was right in revoking the probate and the letters testamentary.

*Order affirmed, with costs.*