# COMPTROLLER OF THE TREASURY *v.* LENDERKING

[No. 256, September Term, 1972.]

*Decided April 25, 1973.*

**614**

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

William R. Lenderking, Jr., in proper person.

SINGLEY, J., delivered the opinion of the Court.

This case, on appeal from the Maryland Tax Court, is but another episode in the centuries-old pursuit by the tax collector of his prey.

Mr. Lenderking, a foreign service officer, lived with his family in Montgomery County, Maryland, from February, 1967, until 28 December 1969, when he went to Japan on a temporary assignment, and returned to the United States sometime in October, 1970, when he took up residence, first in Virginia (where he lived with friends) and then in the District of Columbia, where he has since remained.

What is in controversy here is Mr. Lenderking's 1970 Maryland income tax liability: Maryland income taxes in the amount of $117.16 had been withheld during that year by the United States government, and Lenderking had paid an additional $700.00 on account of his estimated 1970 State income tax liability. When Lender-

king sought a refund of $564.11 on the theory that he had not been a resident of Maryland during 1970, and was not required to pay a tax on that part of his income earned when he was overseas, the Comptroller denied the refund, and assessed a deficiency of $372.12. On appeal, the Maryland Tax Court ordered a refund of $564.11 which Lenderking had paid and an abatement of the deficiency assessment.[1] From this order, the Comptroller has appealed.

The controlling statute is Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 279 (i) :

*"Resident"* means an individual domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not; but any individual who, on or before the last day of the taxable year, changes his place of abode to a place without this State, with the bona fide intention of continuing to abide permanently without this State, shall be taxable as a resident of this State for that portion of the taxable year in which he resided in this State and as a nonresident of the State for the remainder of the taxable year. The fact that a person who has changed his place of abode, within six months from so doing, again resides within this State, shall be prima facie evidence that he did not intend to have his place of abode permanently without this State. Every individual other than a resident shall be deemed a nonresident. Where, however, an individual who during the taxable year transfers his residence to this State from a state or jurisdiction other than Maryland with

---

1. For reasons not clear to us, Mr. Lenderking did not seek a refund of $253.05, which he apparently attributed to other income of $6,042.74.

the intent of becoming a resident of this State, he shall be taxable under this subtitle only with respect to taxable income as defined herein received by him from and after the date he becomes a resident of this State through the close of the calendar year and the allowable exemptions and dependent credit shall be prorated on the basis of the number of months during which residence was maintained in this State bears to twelve months, provided, however, that an individual filing a return in accordance with this provision shall not be entitled to the credit provided in § 290 of this subtitle for any income tax paid to the state or jurisdiction of his former residence while a resident of such former state or jurisdiction."

It is clear that the thrust of the Code provision is bifurcated: it reaches an individual who is domiciled in Maryland on the last day of the taxable year, as well as the individual ". . . who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not; . . . ." *See Wood v. Tawes,* 181 Md. 155, 160, 28 A. 2d 850 (1942).

It seems to be undisputed that Mr. Lenderking "maintained a place of abode" in Maryland, commencing in February, 1967. His wife and children lived in the house in Montgomery County on which he paid taxes while he was out of the country and would appear to live there still. Mr. Lenderking argues that he and his wife have lived apart since August of 1970, and that he had determined as early as December, 1969 that he would never return to Maryland.

Chief Judge Bond's comment for the Court, in *Wood v. Tawes, supra,* 181 Md. at 160 is apposite here:

"Whatever application the words 'domicile' and 'resident' may require elsewhere, under

this statute [Code (1939) Art. 81, § 230, contained a definition identical with that of Art. 81, § 279 (1)] the tax is imposed on incomes of every individual who for more than six months of the taxable year maintained a place of abode within the State, whether domiciled in the State or not. It is a provision contained in a large number of State income tax statutes. Maintenance of a place of abode, however, must involve at least a sufficient residence within the State to bring the individual within the taxing jurisdiction, otherwise the exaction might amount to a deprivation in violation of the Fourteenth Amendment of the United States Constitution. But subject to that qualification the State has power to impose the tax on such individuals even on the basis of income gained outside the jurisdiction, including that received as salary from the federal government. The exaction is of a share in the expenses of the State government, the benefits of which the individual chooses to enjoy. Domicile and the intention of the individual regarding continuance in his abode are not decisive. [citing cases]"

Mr. Lenderking places his principal reliance on the issue of domicile. He contends that prior to coming to Maryland, he had been domiciled in Connecticut, and would have us believe that Connecticut is still his domicile. However, he readily concedes that he registered to vote in Maryland in the general election of 1968 (although he did not, in fact, cast an absentee ballot while he was overseas).

Although we recognize that a change of domicile is an exercise of the mind, the substitution of an *animus non revertendi* for an *animus manendi*, *Shenton v. Abbott*, 178 Md. 526, 534, 15 A. 2d 906 (1940), the cerebration must be supported by or at least not be at variance with extrinsic circumstance. Moreover, there

618

may be a sharp distinction between a change of domicile and a change of residence, *Shenton v. Abbott, supra,* 178 Md. at 530-31.

1 *Restatement of Conflict of Laws* 2d, § 19 at 78 (1971) makes it quite clear that a domicile, once established, continues until it is superseded by a new domicile:

"§ 19 A domicil once established continues until it is superseded by a new domicil.
"Comment:
*a.* Every person must at all times have a domicil (see § 11). A domicil, once established, continues until a new one is acquired.

Illustrations:

\* \* \*

3. A, having a domicil in state X, decides to make his home in state Y. A has not yet gone to Y. A's domicil is in X.
4. A, having a domicil in state X, decides to make his home in state Y. He leaves X and is on his way to Y but has not yet reached Y. His domicil is in X.

"Comment:

*b.* The rule of this Section is equally applicable whether the last domicil is a domicil of origin, a domicil of choice, or a domicil assigned by operation of law. If a domicil of choice is abandoned without acquiring a new domicil of choice, the domicil of origin is not thereby revived, but the last domicil of choice continues to be the domicil."

As a consequence, we conclude that Mr. Lenderking, although he may originally have been domiciled in Connecticut, became a domiciliary of Maryland, if not when he established his residence here, certainly when he registered to vote here in 1968, see Maryland Constitution, Art. I, § 1 and Code (1957, 1967 Repl. Vol.) Art. 33, § 19.

Evidence that a person registered or voted is admissible and ordinarily persuasive when the question of domicile is at issue.

> "While evidence of the exercise of the right of suffrage in a certain place is not conclusive, as a general rule, in determining the question of domicile, and may sometimes be of slight importance when overbalanced by other circumstances, such evidence should ordinarily have considerable weight, because it is very strong evidence of intention." *Shenton v. Abbott, supra,* 178 Md. 531, 532.

*See also, Wagner v. Scurlock,* 166 Md. 284, 292, 170 A. 539 (1934); *Willingham v. Willingham,* 162 Md. 539, 540, 160 A. 280 (1932); Leflar, *American Conflicts Law* § 10 at 20 (1968).

The act of registering, taken together with the fact that Mr. Lenderking lived with his family in Maryland from 1967 until late 1969, gives rise to a rebuttable presumption that he was domiciled in Maryland, Leflar, *supra,* § 15 at 28.

We find Mr. Lenderking's contention that he may have determined as early as December, 1969 to reside in a place other than Maryland inadequate to rebut this presumption, and conclude that he was domiciled in Maryland at least through the month of October, 1970, when he acquired a new "place of abode" in the District of Columbia. This is exemplified by illustrations 3 and 4 and Comment *b.* set out under § 19 of Restatement, *supra,* at 78.

On almost identical facts, except that the taxpayer did return to the State, the Maryland Tax Court reached a similar result in *Eugene G. Hilty v. Comptroller of the Treasury,* 2 CCH State Tax Reporter, Maryland, ¶ 200-496 (1966), the opinion in that case having been written by Judge Irving A. Levine, now a member of this Court. There, Hilty, an employee of a Maryland corporation, unsuccessfully sought a refund of Maryland

income taxes for the years 1963 and 1964, when he was working in Italy for his Maryland employer. Hilty's argument, like Mr. Lenderking's, was that he did not lose his domicile of origin in Pennsylvania, where he had been born and educated, when he moved to Maryland.

The Tax Court concluded that Hilty acquired a domicile in Maryland when he moved here in connection with his employment, intending to remain indefinitely, and that his domicile continued to be in Maryland during the period he remained in Italy, because his domicile must have been in Maryland until a new domicile was acquired, relying on *Hall v. Morris,* 213 Md. 396, 404, 132 A. 2d 113 (1957) and the holding in *Shenton v. Abbott, supra,* 178 Md. at 530 that "[w]hile a person may have several residences, he can have only one domicile at a time."

This, in essence, was Mr. Lenderking's situation. He abandoned his Connecticut domicile when he moved to Maryland, intending to remain. When he left Maryland, even with the intention of not returning, Maryland remained his domicile until he acquired a new one and a new place of abode, which did not occur until October, 1970. As a consequence, he remained liable for the payment of Maryland income taxes for 10 months of that year.

At argument before us it was conceded that the deficiency of $372.12 assessed against Mr. Lenderking for the year 1970 may well have been excessive, in view of the fact that he was domiciled in Maryland for only 10 months of the year 1970. If such proves to be the case, the assessment can be corrected on remand.

> *Order reversed; order entered denying the r e f u n d of $564.11.*
>
> *Case remanded for the entry of an order assessing a deficiency in such amount as may be determined to be proper; costs to be paid by appellee.*