## KNAPP *v.* COMPTROLLER OF THE TREASURY, STATE OF MARYLAND

[No. 30, September Term, 1973.]

*Decided October 4, 1973.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

Richard C. Knapp in proper person.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

PER CURIAM:

The question for decision by us is whether there was sufficient evidence before the Maryland Tax Court to support its conclusion that the appellant, Richard C. Knapp, was domiciled in Maryland for the taxable years 1969, 1970 and 1971 and thus a "resident" of the State pursuant to Code (1957, 1969 Repl. Vol.), Art. 81, § 279 (i). We have concluded that there was sufficient evidence and will affirm the order of the Maryland Tax Court, dated December 18, 1972, sustaining the deficiency assessments of the Comptroller of the Treasury, appellee, for the years mentioned in the total amount of $1,298.76 including interest and penalty.

Mr. Knapp and his wife, Shirley M. Knapp, filed combined separate Maryland income tax returns on "Form 502, Resident" for the taxable years 1969, 1970 and 1971. On the 1969 return Mr. Knapp made a subtraction modification of $4,041.88 from a total income of $8,798.84. He explained this subtraction modification as being salary earned by him while working in West Virginia from June 24, 1969 to December 31, 1969 and taxed by that State. In the 1970 Maryland tax return he made a subtraction modification of $10,855.00 with the explanation "salary earned and taxed while working in W. Va. & Penn. — entire year — 1970." He made a subtraction modification of $12,278.46 from the 1971 return with the explanation: "income while residing in Penn. (York)." On all of the tax returns for the years in question, under "Present Address" appears "112 Edgemere Rd. Hillsmere, Annapolis, Md., 21403."

The Comptroller, in making the deficiency assessments,

gave the taxpayer credit for the State income taxes he had paid to West Virginia and Pennsylvania for the years 1969, 1970 and 1971.

It is Mr. Knapp's contention before the Maryland Tax Court and before us that he was a nonresident of the State of Maryland domiciled in Pennsylvania and, hence, was not required to pay Maryland income taxes. Before the Tax Court he testified, in part, as follows:

> "In my particular case, I was transferred out of this state in 1969 — June of 1969 I went to West Virginia to a little place called Piedmont, West Virginia. It's a policy of our company that when you leave the area, your wife is supposed to go with you. Well, I took my wife down there to find a house; and she didn't like the area at all and she said she wasn't about to move. So I said, 'That's fine, you stay where you are, I'm going anyway.' Which I did. I stayed there and I worked there.

> "In July of 1970 the company come along and told me I was going to York, Pennsylvania. Now in some cases the company asks us if we will go or in some cases they tell us to go. Now, at Piedmont I was asked to go. To York, I was told I was going. So I have been there since June or July — July of 1970; and I have been there ever since. I work on an average of three nights a week. I go in at 8 o'clock in the morning sometimes — like this morning I was supposed to be there at 8 o'clock and get off at 10:15 at night. It happens to be about 120 miles, I think, from there to Annapolis where they try to tell me I'm domiciled. It ain't no way I'm going to run all those hours. So I have me an apartment up there which I stay in. I return once in a while to this state to visit my kids."

He also testified that he was employed by the G. C. Murphy Company and maintains a checking account in York, Pennsylvania where he works for that Company. In response to questions by members of the Tax Court, he

further stated that he owns — jointly with Mrs. Knapp — real estate in Annapolis, Maryland, where his wife and children reside. He stated that he and his wife were not legally separated or divorced and that although he did not come back to Annapolis every weekend, he did come back "maybe every three weeks or something. When I was in West Virginia, I came in once a month or something like that." Mrs. Knapp is employed by the Maryland National Bank in Annapolis where she has worked for approximately 12 years and where she maintains a checking account in the joint names of herself and Mr. Knapp. The automobiles of both Mr. and Mrs. Knapp are registered in Maryland and Mr. Knapp has a Maryland operator's license.

Mr. Knapp stated on cross-examination that he had moved to Maryland in June of 1954, working in a Murphy store, No. 149, in Annapolis. He originally lived in Baltimore, but sometime in 1962 purchased a home with his wife in Annapolis. He had been a registered voter in Maryland, but has now registered to vote in Pennsylvania although he did not vote in the last presidential election. He maintains a safe deposit box at the Maryland National Bank in Annapolis where his wife works.

After quoting from the opinion of our predecessors in *Shenton v. Abbott*, 178 Md. 526, 530, 15 A. 2d 906, 908 (1940) defining "domicile," the Maryland Tax Court concluded that Mr. Knapp had not abandoned his Maryland domicile.

Code (1957, 1969 Repl. Vol.), Art. 81, § 288, imposes, *inter alia*, a State income tax as provided in Article 81 upon "the taxable net income as defined in § 280 (a) of every resident individual of this State. . . ."

"Resident" is defined by Art. 81, § 279 (i), as follows:

"(i) *'Resident'* means an individual domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not; but any individual who, on or before the last day of the taxable year, changes his place of

abode to a place without this State, with the bona fide intention of continuing to abide permanently without this State, shall be taxable as a resident of this State for that portion of the taxable year in which he resided in this State and as a nonresident of the State for the remainder of the taxable year. The fact that a person who has changed his place of abode, within six months from so doing, again resides within this State, shall be prima facie evidence that he did not intend to have his place of abode permanently without this State. Every individual other than a resident shall be deemed a nonresident. Where, however, an individual who during the taxable year transfers his residence to this State from a state or jurisdiction other than Maryland with the intent of becoming a resident of this State, he shall be taxable under this subtitle only with respect to taxable income as defined herein received by him from and after the date he becomes a resident of this State through the close of the calendar year and the allowable exemptions and dependent credit shall be prorated on the basis of the number of months during which residence was maintained in this State bears to twelve months, provided, however, that an individual filing a return in accordance with this provision shall not be entitled to the credit provided in § 290 of this subtitle for any income tax paid to the state or jurisdiction of his former residence while a resident of such former state or jurisdiction."

We recently construed and applied Art. 81, § 279 (i) in *Comptroller v. Lenderking,* 268 Md. 613, 303 A. 2d 402 (1973). In *Lenderking* we cited with approval 1 *Restatement of the Conflict of Laws* 2d, § 19 at 78 (1971) that a domicile, once established continues until it is superseded by a new domicile. We held that Mr. Lenderking, the taxpayer in that case, although originally domiciled in Connecticut, had established a new domicile in Maryland, when he came to

live in this State with his family and registered to vote in Maryland — a new domicile he did not lose when he went to Japan on a temporary assignment and lived in Virginia with friends after his return to the United States.

Judge Singley, for the Court, stated:

"Although we recognize that a change of domicile is an exercise of the mind, the substitution of an *animus non revertendi* for an *animus manendi*, *Shenton v. Abbott*, 178 Md. 526, 534, 15 A. 2d 906 (1940), the cerebration must be supported by or at least not be at variance with extrinsic circumstance. Moreover, there may be a sharp distinction between a change of domicile and a change of residence, *Shenton v. Abbott, supra*, 178 Md. at 530-31." (268 Md. at 617-18, 303 A. 2d at 404-05)

There seems to be little doubt that, in the present case, the taxpayer established a domicile in Maryland when he moved to Maryland in June, 1954, purchased a home in this State in 1962 and registered to vote here. This status continues until Mr. Knapp establishes that he has acquired a new domicile. *Lenderking, supra.* As already indicated, in our opinion there was sufficient evidence to support the decision of the Maryland Tax Court that he had not met the burden of establishing a new domicile in Pennsylvania. The "extrinsic circumstances" relied upon by the Tax Court indicate that Mr. Knapp's Maryland domicile continues. He and his wife own jointly the real property in Annapolis where Mrs. Knapp and their children continue to live. He and his wife are not legally separated or divorced and he testified that although he does not return to Annapolis every weekend, he does return to visit his family "maybe every three weeks or something." His automobile and that of his wife are titled in Maryland; he still has a Maryland operator's license pursuant to which he operates his automobile. He still has a safe deposit box in Maryland in the joint names of himself and Mrs. Knapp. His present *residence* in York, (presently

Willow Grove) Pennsylvania and the other factors upon which Mr. Knapp relies are not sufficient in our opinion to indicate that the Tax Court's conclusion that he had not changed his Maryland domicile was in error.

> *Order of December 18, 1972*
> *affirmed, the appellant to*
> *pay the costs.*