CHARLES FRAKES et al., appellants, v. FARRAGUT COMMUNITY SCHOOL DISTRICT et al., appellees.

No. 51027.

(Reported in 121 N.W.2d 636)

MAY 7, 1963.

Edwin A. Getscher, of Hamburg, for appellants.

John S. Redd, of Sidney, for appellees.

SNELL, J.—This is an action in equity against the Farragut Community School District of Farragut, Iowa, and others to restrain the district from selling bonds, on ground of irregularities in special bond election.

On May 3, 1962, an election was held in the Farragut Community School District of Farragut, Iowa, to approve or disapprove a bond issue of not to exceed $420,000 for the erection of school buildings for the school district. Following the canvass of the ballots cast the election board found the bond issue had carried by the required 60 percent.

The plaintiffs allege that the proposal did not receive the required 60 percent affirmative vote of properly counted votes of qualified electors.

The plaintiffs allege that some "yes" votes were improperly

counted, some "no" votes improperly rejected and that the votes of two nonresidents were improperly received. The evidence was introduced by stipulation and the introduction of the challenged ballots.

There were 760 ballots cast and counted by the election board and three ballots were discarded as spoiled and not counted. Of the 760 ballots counted the election board found 458 to be for and 302 against the bond issue.

In district court counsel for the respective parties scrutinized all ballots and then submitted to the court for examination and consideration 23 as questionable. The 23 included the three ballots discarded by the election board.

The votes of Max and Charlotte Livingston were challenged on the ground that they were not residents and legal voters at the time of the election. How they voted does not appear. Their right to vote is important only in determining the total number of legal votes cast from which the percentage for and against the proposition must be determined. Their status as voters will be discussed in Division III infra.

I. Only ballots cast and counted shall be used in computing the total vote cast for and against the proposition. Properly rejected ballots are not included in the computation. For adoption the proposition required at least a 60 percent affirmative vote. Section 75.1, Code of Iowa; Dickinson County Memorial Hospital Corporation v. Johnson, 248 Iowa 392, 80 N.W.2d 756; Headington v. North Winneshiek Community School District, 254 Iowa 430, 441, 117 N.W.2d 831, 838.

II. The 23 ballots submitted to the trial court for examination were challenged as having been marked with a check mark rather than a cross or as bearing distinguishing marks.

Section 49.92, Code of Iowa, provides that the voting mark shall be by a cross. Ballots marked with a check mark instead of a cross cannot be counted. Donlan v. Cooke, 212 Iowa 771, 776, 237 N.W. 496.

The question of unauthorized marks on a ballot sufficient to constitute an invalidating identification is thoroughly discussed in Fullarton v. McCaffrey, 177 Iowa 64, 158 N.W. 506. The trial court considered and carefully applied the rules set forth there-

in. We followed the Fullarton case as recently as November 1962. See Headington v. North Winneshiek Community School District, supra. Repetition of the rules is not necessary here.

Exhibits 1, 2 and 3 are ballots bearing identification marks and writing and were properly rejected by the election board. Thus, we have the 760 ballots counted by the election board with 20 still to be considered.

Exhibits 4 and 5 are ballots marked with a check mark rather than a cross in the "No" square. Exhibits 10 and 11 are ballots marked with a check mark rather than a cross in the "Yes" square. These ballots are improperly marked and cannot be counted.

This reduces the "yes" votes to 456, the "no" votes to 300 and the total to 756.

Exhibit 23, a "no" vote, bears an identification mark and cannot be counted. This reduces the "no" votes to 299 and the total to 755.

Exhibit 12 would indicate that the voter first put a check mark in the "yes" square and then drew a line across the part of the check mark outside the square. It is either a check mark or a cross outside the square. In either event it is invalid. This reduces the "yes" vote to 455 and the total to 754.

Exhibits 14, 15, 16, 17 and 18 are each marked with a cross but with the lines extending beyond the square and the point of intersection barely within the square. We agree with the trial court that without the aid of a magnifying glass it is hard to determine that the point of intersection of the lines of the cross is within the square. Both lines of the cross are within the square. The point of intersection is within the square by the width of the pencil mark. To be counted the cross must be substantially within the square. Whittam v. Zahorik, 91 Iowa 23, 37, 59 N.W. 57, 51 Am. St. Rep. 317. On each of these exhibits the cross is substantially within the square. We conclude from our examination as did the trial court that the ballots were properly marked and should be received and counted.

This conclusion does not change the totals.

The cross on Exhibits 6 and 7 is clearly outside the "no" square. The ballots are invalid. This reduces the number of "no" votes to 297 and the total to 752.

■ Two "no" votes, Exhibits 8 and 9, and five "yes" votes, Exhibits 13, 19, 20, 21 and 22, are challenged on similar grounds. Each of the ballots is marked with a cross in a square but one or more of the lines are overemphasized. We conclude as did the trial court that the ballots should be counted. The overemphasis does not appear intended or even useful for identification purposes.

Discussion of each of these ballots would serve no purpose in the determination of the question before us. If all of the five "yes" votes were rejected the remaining "yes" votes would still exceed 60 percent of the votes counted.

Of the 752 votes counted there were 455 "yes" votes or more than 60 percent of the total.

■ III. The legal residence within the district of Max and Charlotte Livingston is challenged. They are husband and wife. They were reared and graduated from the Farragut High School within the district. Their parents live there. After high school Max and Charlotte continued to live there. For a time Max was employed by the school district. Max was registered and entered military service from Fremont County, Iowa. The parties were married in 1954 and lived within the district both before and after the husband's military service. During his service the wife remained within the district and voted there. After military service of two years Max returned to Farragut and was employed by the school district as a custodian until August 1959. In August 1959 the parties moved to Tarkio, Missouri, where he enrolled as a student at Tarkio College. Tarkio is about 25 miles from Farragut. They live in the "G.I. Village" on the campus. They act as student counselors for which they receive free rent. At the time of trial he was in his fourth year of college preparing to be a teacher. After graduation he expects to teach in Iowa. The wife is employed full time by the college and the husband part time to maintain the family during college years.

Both have voted in Farragut previously and as recently as 1962. Neither has ever voted elsewhere. They consider Farragut their home. They return there about twice a week which includes almost every weekend. They belong to and attend church in Farragut and do their banking business there. Their car is reg-

istered in Fremont County and each has an Iowa driver's license. Their income tax returns are made from Farragut and they file Iowa State resident income tax returns. Because of Missouri income they also file Missouri State income tax returns. They moved to Tarkio, Missouri, for the sole purpose of pursuing his education and with no intention of making it their permanent home.

It is the claim of plaintiffs that the Livingstons in maintaining a home in Tarkio are residents there and are not legal residents of the Farragut district or qualified voters therein. We do not agree.

■ A comparable situation was before this court in 1880 in Vanderpoel v. O'Hanlon, 53 Iowa 246, 248, 249, 5 N.W. 119, 36 Am. Rep. 216, wherein it was held that one who becomes a resident of a county for the purpose of attending college and who has formed no intention of remaining after the completion of his college course is not entitled to vote in such county. To constitute a residence within the law as to qualification of voters the fact of residence and intent to remain must concur. It was there said:

"An individual cannot be entitled to vote in two different counties in this State at the same election. Yet he may, in a certain sense, actually reside in one and be a legal voter in another. He is entitled to vote only in the county where his home is * * * as distinguished from a residence acquired as a sojourner for business purposes, the attainment of an education, or any other purpose of a temporary character. If a person leaves the place of his residence or home with intent of residing in some other place and making it his fixed place of residence, but never consummates such intent, it cannot be said his residence has been changed thereby. * * * The intent and the fact must concur."

The rules stated in the cited case have not been changed.

In the case before us the intent of the Livingstons is clear. From childhood the Farragut district has been their home. They still regard it as such and have never abandoned it as their legal residence.

We agree with the trial court that they were entitled to vote in the election.

The trial court in a careful analysis of the evidence and consideration of applicable law determined that the proposal for the issuance of school bonds had been approved by more than the required 60 percent of votes cast and counted and that the injunction sought by plaintiffs should be denied. We agree.

The case is—Affirmed.

All JUSTICES concur.