BAINUM *v.* KALEN ET AL.

[No. 135 (Adv.), September Term, 1974.]

*Per Curiam Order August 28, 1974.*
*Opinion Filed September 30, 1974.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES and ELDRIDGE, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*James E. Carbine,* with whom were *Stanley J. Neuhauser* and *Weinberg & Green* on the brief, for appellant.

*Ellen Luff* for appellees Kalen and Rivers. Submitted on brief by *Francis B. Burch, Attorney General* and *George A. Nilson, Assistant Attorney General,* for appellee State Administrative Board of Election Laws.

ELDRIDGE, J., delivered the opinion of the Court.

The appellant Stewart W. Bainum, Jr., filed a certificate of candidacy for the nomination of the Democratic Party for the office of State Senator representing the twentieth legislative district, located in Montgomery County. The appellees, residents of the twentieth legislative district, contending that Mr. Bainum did not meet the constitutional qualifications to be eligible for the office, brought this action in the Circuit Court for Anne Arundel County for a writ of mandamus and for declaratory relief. The defendants were Stewart W. Bainum, Jr., the State Administrative Board of Election Laws, and the State Administrator of Election Laws. Upon cross-motions for summary judgment, the circuit court (Childs, J.) issued an order dismissing the State Administrator of Election Laws from the case, declaring that Mr. Bainum was ineligible to be a candidate for the Democratic Party's nomination for the Maryland Senate and ordering that a writ of mandamus issue directing the State Administrative Board of Election Laws to remove Mr. Bainum from the ballot for the upcoming primary election. Mr. Bainum then took an appeal to the Court of Special Appeals. Because of the importance of the matter, and the

need for expedition, we granted a writ of certiorari prior to a decision by the Court of Special Appeals. On August 28, 1974, two weeks before the primary election, we entered a per curiam order affirming the order of the Circuit Court for Anne Arundel County. We now state our reasons for the affirmance.

Article III, Section 9, of the Constitution of Maryland provides in pertinent part:

> "No person shall [be] eligible as a Senator or Delegate, who at the time of his election, is not a citizen of the State of Maryland, and who has not resided therein, for at least three years, next preceding the day of his election . . . ."

The question upon which Mr. Bainum's eligibility turns is whether he has, within the meaning of the constitutional provision, "resided" in Maryland for the three years preceding the 1974 election. Thus, to be eligible for the Maryland Senate, he must have "resided" in Maryland continually from November 1971.

The basic facts concerning Mr. Bainum's residence were undisputed. Stewart W. Bainum, Jr., was born in Montgomery County, Maryland and lived there with his parents until the fall of 1964, when he was 18 years old. From the fall of 1964 to June 1968, Mr. Bainum attended Pacific Union College in California, except that he spent a portion of 1967 at Andrews University in Michigan. He returned to his parents' home in the summers of 1965, 1966, 1967, and for two and one-half weeks in 1968. He spent the remainder of the summer of 1968 in Europe.

From the fall of 1968 to June 1970, Mr. Bainum studied for a Master of Business Administration degree at the University of California at Los Angeles. He was married in Los Angeles to a California resident on July 7, 1969. Following the marriage, Stewart Bainum and his wife lived in a Montgomery County, Maryland, apartment for one and a half months. They also spent two months in the summer of 1970 living at Mr. Bainum's parents' home.

While attending graduate school in California, Stewart Bainum registered to vote and actually voted in the June 1970 California primary election. He obtained a California driver's license in 1969 or 1970. He bought a car which he registered in California, and he later bought another car which he registered in Oregon. Mr. Bainum had a savings account in California before his marriage and a joint checking account in California after his marriage. At the same time, he maintained a checking account in Maryland.

From August 1970 to May 1971, Stewart Bainum was employed as a teacher of Business Management at Southern Missionary College in Tennessee. He filed no Maryland State Income Tax return covering the time of his employment in Tennessee. He and his wife rented a furnished house while in Tennessee. They had a joint checking account there, and Stewart Bainum also continued to keep his Maryland checking account. In January 1971, Mr. Bainum informed the college president that he would not continue to teach after May 1971. Concerning his stay in Tennessee, Mr. Bainum testified:

> "Q. Mr. Bainum, you said you went to Tennessee, and if I understand you correctly, that when you went to Tennessee, if you liked Tennessee you might have stayed there indefinitely?
>
> "A. No, I said it was a trial. The trial was to find out if I liked the teaching profession. It is conceivable that I would have liked teaching and teaching in that environment and stayed there the rest of my life, as was conceivable when I went to college as a student."

From July 19, 1971, to August 14, 1972, Stewart Bainum and his wife lived in Oronoco County, Michigan, where Mr. Bainum took graduate courses at Andrews University and his wife taught in a high school. They returned to Mr. Bainum's parents' home for several visits in 1971 and a visit in May 1972. In March 1972, Stewart Bainum registered to vote in Michigan, and he voted in a Michigan primary election on May 16, 1972. When registering to vote he signed

a sworn statement that he had established a Michigan residence and reported only his California registration as a previous voter registration. Stewart Bainum obtained Michigan tags for his car in 1971, and a Michigan driver's license in 1972. He reported a capital gain on the sale of some Maryland property on his 1971 Michigan State Income Tax return. He paid no tax on this capital gain since he reported it as accruing during his Tennessee residence. Mr. Bainum filed no Maryland Income Tax return for the same period. His Federal Income Tax return for 1971 listed his Michigan address.

With regard to his residence in Michigan, Stewart Bainum testified as follows:

"A. Given the fact that I went to Michigan and during that period I was in kind of a trial period, I went there not knowing where I would go afterwards.

"Q. So, when you went up there you didn't know if you would stay there, return to Maryland, or go to some other state, is that correct?

"A. I didn't think about it to be frank. There was no reason to think about it. I'm not that insecure that I have my life mapped out five years ahead . . . ."

In August 1972, Stewart Bainum and his wife returned to Maryland where they have resided until the present time. Mr. Bainum continued to use Michigan tags on his car until the beginning of 1973 and to use a Michigan driver's license until early 1974. In 1973, Mr. Bainum filed a Maryland Income Tax return for the year 1972, in which he stated that he had been a resident of Maryland only from "8/72 to present." On this return, $5,996.53 was subtracted from total income and reported as "income earned as non-resident."

On these facts, Judge Childs concluded for the court below:

" . . . whatever his original intentions may have been and whatever his present intentions now

are, . . . at least, while he was in Michigan he gave up his Maryland residence, established a residence for political purposes in the State of Michigan and therefore has not complied with the residency requirements of the Maryland Constitution in order to qualify for the office he seeks."

Judge Childs chiefly relied upon the facts that Stewart Bainum registered to vote and voted in Michigan, treated Michigan as his domicile for tax purposes, and obtained a Michigan driver's license and Michigan tags for his automobile. We agree with Judge Childs that as of November 1971, and for a period of time thereafter, Mr. Bainum "resided" in Michigan rather than Maryland and thus did not meet the constitutional residency requirement to be a candidate for the Maryland Senate.

Preliminarily, a question has been raised in this case concerning the meaning of the term "resided" in Article III, Section 9, of the Maryland Constitution. It is suggested that the word "reside" or its equivalent, as used in constitutional or statutory provisions setting forth qualifications for political office or voting, means actual physical presence or abode rather than domicile. Some language in the opinion in *Shaeffer v. Gilbert*, 73 Md. 66, 70-71, 20 A. 434 (1890), arguably supports the distinction. However, to the extent that it does, the language from the *Shaeffer* case was specifically disapproved by this Court in *Gallagher v. Bd. of Elections*, 219 Md. 192, 206, 148 A. 2d 390 (1959).

From *Thomas v. Warner*, 83 Md. 14, 20, 34 A. 830 (1896), and *Howard v. Skinner*, 87 Md. 556, 559, 40 A. 379 (1898), until the present, this Court has consistently held that the words "reside" or "resident" in a constitutional provision or statute delineating rights, duties, obligations, privileges, etc., would be construed to mean "domicile" unless a contrary intent be shown. Thus, our predecessors stated in *Howard v. Skinner, supra,* 87 Md. at 559: "Residence, as contemplated by the framers of our Constitution, for political or voting purposes, means *a place of fixed present domicile.* " Other cases holding that the words "reside" or

"resident" should be construed as "domicile," are *Harrison v. Harrison*, 117 Md. 607, 612, 84 A. 57 (1912) (involving the word "resides" in a statute dealing with divorce); *Wagner v. Scurlock*, 166 Md. 284, 291, 170 A. 539 (1934) (a statute dealing with motor vehicle accidents involving nonresidents); *Shenton v. Abbott,* 178 Md. 526, 530, 15 A. 2d 906 (1940) (the word "residence" in a statute specifying where a will should be probated); *Rasin v. Leaverton,* 181 Md. 91, 93, 28 A. 2d 612 (1942) (the word "resided" in the constitutional provision setting forth the qualifications to be a candidate for State's Attorney); *Gallagher v. Bd. of Elections, supra,* 219 Md. at 205-207 (the word "resident" in the Baltimore City Charter provision delineating the qualifications of candidates for Mayor); *Maddy v. Jones,* 230 Md. 172, 179, 186 A. 2d 482 (1962) (the word "resident" in the Unsatisfied Claim and Judgment Fund Law).

Consequently, whether Stewart Bainum "resided" in Maryland for the three-year period immediately preceding the 1974 election, depends upon whether Maryland was his place of "domicile" throughout that period.

A person may have several places of abode or dwelling but "[h]e can have only one domicile at a time." *Shenton v. Abbott, supra,* 178 Md. at 530. A person's domicile has been defined as the place "with which he has a settled connection for legal purposes" and the "place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning." *Shenton v. Abbott, supra,* 178 Md. at 530. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends it to be. *Harrison v. Harrison, supra,* 117 Md. at 614; *Wagner v. Scurlock, supra,* 166 Md. at 292; *Gallagher v. Bd. of Elections, supra,* 219 Md. at 198. However, the determination of intent is not dependent upon what one says at a particular time. As this Court has stated, intent regarding domicile "may be more satisfactorily shown by what is done than by what is said." *Wagner v. Scurlock, supra,* 166 Md. at 292; *Harrison v. Harrison, supra,* 117 Md. at 614.

There are certain well established principles applied in determining a person's intent regarding his domicile. Thus, once a place of domicile is determined or established, a person retains his domicile there unless the evidence affirmatively shows an abandonment of that domicile. This Court in *Wagner v. Scurlock, supra,* 166 Md. at 292-293, explained as follows:

"When one takes up a new residence, in order to avail himself of the rights which such change of domicile confers, it must be not so much with the intention of there remaining, but of the abandonment of his former domicile as a place of residence, and 'excludes any definite intention to return to the place of the previous domicile.' "

And in *Shenton v. Abbott, supra,* 178 Md. at 530, it was stated:

"It is a fundamental rule that, in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention of remaining there permanently or at least for an unlimited time."

*See also Gallagher v. Bd. of Elections, supra,* 219 Md. at 208.

In deciding whether a person has abandoned a previously established domicile and acquired a new one, courts will examine and weigh the factors relating to each place. While this Court has never deemed any single circumstance conclusive, it has nevertheless viewed certain factors as more important than others. The Court has indicated that the two most important elements in determining domicile are where a person actually lives and where he votes. In *Harrison v. Harrison, supra,* 117 Md. at 615, our predecessors stated: "The presumption of the law is that where a person actually lives is his domicile, though this is a rebuttable presumption." As to the place of voting, this Court has termed it the "highest evidence of domicile," *Wagner v. Scurlock, supra,* 166 Md. at 292.

Where the evidence relating to voting and the evidence

concerning where a person actually lives both clearly point to the same jurisdiction, it is likely that such place will be deemed to constitute the individual's domicile. *Cf. Rasin v. Leaverton, supra,* 181 Md. at 93-94. However, where these factors are not so clear, or where there are special circumstances explaining a particular place of abode or place of voting, this Court will look to and weigh a myriad of other factors in deciding a person's domicile. These include such things as: the paying of taxes and statements on tax returns; the ownership of property; where the person's children attend school; the address at which one receives mail; statements as to residency contained in contracts or other documents; statements on licenses or governmental documents; where furniture and other personal belongings are kept; which jurisdiction's banks are utilized; membership in professional, fraternal, religious or social organizations; where one's regular physicians and dentists are located; where one maintains charge accounts; and any other facts revealing contact with one or the other jurisdiction. *See Gallagher v. Bd. of Elections, supra,* 219 Md. at 196-198.

Applying these principles to the present case, it should first be noted that Stewart Bainum's domicile certainly was Maryland until 1969. It is unnecessary for purposes of this case to decide whether, during the period from 1969 until July 1971, when he attended graduate school in California and then was employed as a teacher in Tennessee, he abandoned his Maryland domicile and became a domiciliary of California or later of Tennessee. What is clear from the undisputed facts is that between July 1971 and August 1972, as Judge Childs held, Stewart Bainum abandoned his prior domicile and established a new domicile in Michigan. His principal place of abode was in Michigan; he registered to vote in Michigan; in connection with his registration, he signed a statement that he had established a Michigan residence; and he voted in Michigan in the 1972 primary election. In addition, Mr. Bainum registered his automobile in Michigan, obtained a Michigan driver's license, considered Michigan his

domicile for state income tax purposes, and listed Michigan as his residence on his federal income tax return.

Both the surrounding circumstances as well as his testimony indicated that at the time he was in Michigan, he had no intention of returning to Maryland. And after he did return to Maryland in August 1972, he stated on his Maryland income tax return filed in 1973 that he had been a resident of Maryland only from August 1972, and he subtracted from his total income what he had earned in Michigan during the first part of 1972. Of course, Mr. Bainum was entitled to subtract the income earned while he was in Michigan during the first part of 1972 only if his domicile were Michigan instead of Maryland. *See* Maryland Code (1969 Repl. Vol.), Art. 81, § 279(i).

In light of the principles set forth in the Maryland cases previously discussed, it is difficult to imagine a stronger case of a change of domicile. Practically all of the most significant circumstances point to a Michigan domicile from July 1971 through August 1972.

Mr. Bainum argues that the time he spent in Michigan during 1971 and 1972 was as a student, and that one's absence from Maryland during a period when he is pursuing studies elsewhere should be viewed as temporary and not sufficient to establish a change of domicile. Normally a student who pursues a course of study away from the place which had been his home, does not thereby abandon one domicile and establish a new one. As our predecessors stated in *Shaeffer v. Gilbert, supra,* 73 Md. at 72:

> "We agree that mere residence at the college for the purpose of pursuing his studies would not, in itself, be sufficient to prove that he meant to abandon his original residence, or to prove that he meant to make his actual home . . . [elsewhere]. In the absence of other proof, the law would presume, he was there for the purpose of prosecuting his studies, and this purpose being accomplished, he intended to return to his former residence."

*See also New England Mutual Life Ins. Co. v. Lauffer,* 215 F.

Supp. 91, 97 (S.D. Cal. 1963); *Mallon v. Lutz*, 217 F. Supp. 454, 456 (E.D. Mich. 1963); *Frakes v. Farragut Community School District*, 255 Iowa 88, 121 N.W.2d 636 (1963); *Michaud v. Yeomans*, 115 N.J.Super. 200, 278 A. 2d 537 (1971); *Kegley v. Johnson*, 207 Va. 54, 147 S.E.2d 735 (1966).

However, Stewart Bainum did much more than temporarily live in Michigan while pursuing his studies there. He registered to vote and voted in Michigan; he considered Michigan as his domicile for automobile registration and driver's license purposes; and he treated Michigan rather than Maryland as his domicile for income tax purposes. While a student does not effect a change in domicile merely by living away from home while pursuing his studies, nevertheless a student may abandon his former domicile and establish a new domicile where he attends school. When a student engages in conduct such as Stewart Bainum did here, he will be deemed to have abandoned one domicile and established another.

As Stewart Bainum was not a domiciliary of Maryland for the three years preceding the 1974 election, he was not eligible to be a candidate for the Maryland Senate in that election.