744 A.2d 1083

**Karen EGLOFF, et al.**

v.

**COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY, Maryland, Sitting as the District Council, et al.**

**No. 6291, Sept. Term, 1998**

Court of Special Appeals of Maryland.

Feb. 1, 2000.

114

**116**

Thomas E. Dernoga (Gray & Dernoga, on the brief), Highland, for appellants.

Joyce B. Nichols, Marlboro, for appellee, County Council of Prince George's County.

Bruce L. Marcus (Marcus & Bonsib, Andre J. Gingles, John P. Davey, Aluanda R. Drain and O'Malley, Miles, Nylen & Gilmore, Greenbelt, on the brief, for appellee, The Peterson Companies).

Argued before BYRNES, ADKINS, and MARY BETH McCORMICK (Specially assigned), JJ.

MARY BETH McCORMICK (Specially assigned), Judge.

This appeal concerns a proposed plan by the Peterson Companies, Inc. ("Peterson") to build a waterfront entertainment and retail complex, to be known as National Harbor, along the Potomac River in the Smoot Bay area of Prince George's County. The County Council of Prince George's County, sitting as the District Council ("the District Council") [1], approved a conceptual site plan for the project, and the Circuit Court for Prince George's County affirmed in part and reversed in part the District Council's decision. The court ruled that, with one exception, the District Council properly determined that the conceptual site plan conformed to the applicable zoning ordinances. In the court's view, the record

---

1. The property on which National Harbor is to be built is located within the Maryland–Washington Regional District. *See generally* Md.Code (1975, 1997 Repl.Vol., 1999 Cum.Supp.), §§ 7–101—8–127 of art. 28. The County Council of Prince George's County sits as the District Council for the purpose of regulating and otherwise overseeing the zoning of property in that portion of the Regional District located in Prince George's County. *See id.,* § 8–101.

did not reflect that Peterson had conducted adequate study into potential noise problems and noise abatement plans. The court therefore remanded the case to the District Council for the sole purpose of requiring Peterson to present "a proper noise study."

## ISSUES

Appellants/cross-appellees Karen Egloff ("Egloff"), Bonnie Bick, Jon W. Robinson, the Sierra Club, Inc., and the Anacostia Watershed Society, Inc. now contend that the trial court erred in affirming any part of the District Council's decision. They argue, in essence, that:

— The conceptual site plan did not conform to the applicable zoning ordinances in a number of ways, and

— In approving the conceptual site plan, the District Council failed to set forth sufficient findings of fact and conclusions of law.

Peterson and the District Council, the appellees/cross-appellants, have incorporated in their separate briefs motions to dismiss the appeal on the grounds that (i) Karen Egloff did not have standing to petition for circuit court review and, (ii) the remaining appellants/cross-appellees ("the Bick group") did not properly petition for circuit court review.[2] Peterson and the District Council have further filed a cross-appeal, in which they argue, in essence, that:

— The trial court erred in reversing that portion of the District Council's decision regarding the adequacy of Peterson's noise study, and by remanding the case to the District Council for the presentation of additional evidence.

We find merit in both arguments made by the appellees/cross-appellants in their motion to dismiss. We thus agree that the trial court should not have reviewed the case, in that Egloff did not have standing to petition for judicial review

---

2. Peterson moved to dismiss the appeal of the appellants/cross-appellees to this Court shortly after the appeal was noted, prior to the filing of briefs. This Court denied the motion without prejudice to Peterson again to seek dismissal in its brief.

and the Bick group did not properly petition for judicial review. Although the appellees/cross-appellants present their arguments within a motion to dismiss incorporated in their appellate briefs, it is apparent that they are seeking not merely dismissal of the appeal of the appellants/cross-appellees but also vacation of the trial court's judgment—including its reversal and remand of that portion of the District Council's decision regarding the noise study. We shall therefore elevate substance over form and shall vacate the judgment of the trial court.[3] In light of our decision to vacate, we need not address the cross-appeal as to that judgment.[4]

## FACTS

Peterson's attempt to develop property in the Smoot Bay area into a waterfront complex follows three unsuccessful

---

3. *See generally* Md. Rule 8–604(a).

4. Peterson included certain documents in the appendices to its brief and reply brief, and the appellants/cross-appellees have moved to assess the costs of reproduction of those documents against Peterson. The appellants/cross-appellees contend that the documents are unnecessary to the appeal and, therefore, under Md. Rule 8–501, were improperly included in the appendices. We disagree with the appellants/cross-appellees that the documents would be wholly unnecessary were we to reach the merits of the case. We further observe that, in moving to assess costs against Peterson, the appellants/cross-appellees failed to attach to their motion an affidavit as required by Md. Rule 8–431(c). The appellants/cross-appellees have attached to their motion letters between counsel that indicate disagreement as to whether the documents should have been included in the record extract. The letters do not reflect, however, that counsel for the appellants/cross-appellees ever demanded, under Md. Rule 8–501(d)(4), that Peterson pay in advance for inclusion of the documents in the record extract or risk exclusion of the documents from the extract. In addition, counsel for Peterson wrote to counsel for the appellants/cross-appellees nearly two months before the record extract was due to be filed, explaining his position regarding inclusion of the documents and asking counsel for the appellants/cross-appellees to contact him if he still disagreed. Counsel for the appellants/cross-appellees did not contact counsel for Peterson until five days before the record extract was to be filed. Under the circumstances, we shall deny the motion to assess against Peterson the costs of reproducing the documents in the appendices. The costs shall be assessed against the appellants/cross-appellees in accordance with Md. Rule 8–608(a).

attempts by other developers. In the mid–1960s, an effort was launched to build the "Smoot Bay Waterfront Center." After that project failed, another effort was made in 1983 to transform the property into "Bay of Americas." In 1986, that plan was replaced by a plan to develop "Port of America."

In the mid–1990s, Peterson initiated its plan to develop National Harbor on 533.9 acres of land in Smoot Bay. Peterson sought and obtained from the District Council several zoning changes that would permit the contemplated use. Peterson then submitted a conceptual site plan—a "very general concept for developing a parcel of land before subdivision plans or final engineering designs are begun"[5]—to the Prince George's County Planning Board of the Maryland National Capital Park and Planning Commission.[6] On April 23, 1998, the Planning Board conducted a public hearing at which more than 30 persons testified. That same day, the Planning Board issued a lengthy written decision by which it approved Peterson's conceptual site plan, subject to 35 specific conditions. The final condition was that the plan be reviewed and approved by the District Council.[7] On June 17, 1998, after reviewing the record of the proceedings before the Planning Board, the District Council affirmed the Planning Board's decision to approve the conceptual site plan, subject to the conditions imposed by the Planning Board as well as four additional conditions.

---

**5.** County Code of Prince George's County, Subtitle 27, § 27–272(a)(1).

**6.** The Planning Board is "responsible for planning, platting, and zoning functions primarily local in scope, as distinguished from the regional planning functions of the Commission relating to or affecting the regional district as a planning unit." Code (1975, 1997 Repl.Vol.), § 7–111(a) of art. 28.

**7.** Ordinarily, an appeal to the District Council must be noted before the District Council will review a Planning Board decision regarding a conceptual site plan. *See* County Code of Prince George's County, Subtitle 27, § 27–280 (authorizing appeal to District Council from Planning Board's decision regarding conceptual site plan). *See generally id.*, § 27–299 (indicating that certain appeals from Planning Board decisions are to be taken to the Board of Zoning Appeals rather than the District Council).

Karen Egloff and John O'Loughlin, jointly and *pro se*, filed a petition for judicial review on July 17, 1998. Both Egloff and O'Loughlin had appeared before the Planning Board and the District Council in opposition to Peterson's plans to develop National Harbor. At the start of her testimony before the Planning Board, Egloff had stated that her family had a home near the proposed development, and asserted: "We have lived there for 41 years." Egloff further informed the Planning Board that she was representing her family and "some of the residents" of the neighborhood. The chairperson of the Planning Board asked Egloff if she was an attorney and Egloff responded in the negative. The chairperson then informed Egloff: "[Y]ou can represent your family if you live there and you want to represent you family ... but you can't represent other citizens." Egloff responded simply: "All right. Fine." She then presented her position to the Planning Board. O'Loughlin told the Planning Board that he personally lived near the proposed development. He stated that he had "lived in Prince George's County for over 40 years" and "own[ed] a business in this County." [8]

Although the address listed for O'Loughlin on the petition for judicial review indicated that he did, indeed, live near the proposed development, a Calvert County address was given for Egloff. Both Peterson and the District Council filed responses to the petition indicating their intention to participate in the action [9], and the District Council promptly sent notice of the petition to all parties to the proceeding before it. [10] Subsequently, on September 3, 1998, Peterson and the District Council jointly moved to dismiss Egloff from the case. They asserted that Egloff had represented to both the District Council and the trial court that her address was "2950 Holland

---

8. No transcript of the proceedings before the District Council is included in the record.

9. Apparently unsure as to its right to participate as a respondent, Peterson also filed a motion to intervene as a respondent. The trial court granted the motion.

10. *See* Md. Rule 7–202(d)(3).

Cliffs Road, Huntingtown, Maryland 20639," and urged the court to take judicial notice of the fact that "Huntingtown, Maryland is located entirely within the geographic boundaries of Calvert County, Maryland."

On September 4, 1998, the day after the motion to dismiss Egloff from the case was filed, attorney Thomas Dernoga filed a line with the court entering his appearance on behalf of Egloff, O'Loughlin, and the members of the Bick group, all of whom he identified as "Petitioners." Dernoga also filed a document entitled "Response to Petition for Judicial Review," which reflected the intentions of the members of the Bick group to participate in the action but did not specify in what capacity they intended to participate.[11] On October 13, 1998, Dernoga filed a "Petitioners' Memorandum of Law"[12] and a "Response to Joint Motion to Dismiss" on behalf of "Karen Egloff, et al." In the response to the motion to dismiss, "Karen Egloff, et al." asserted that, "While Karen Egloff does presently reside in Calvert County," she "grew up" and "spent 19 years residing in" her family's home near the proposed development. The response asserted that Egloff "spends substantial time" at the family home, "including occasional residence," in order to care for her aging mother, Susan Egloff.[13] It added that Susan Egloff had devised the family home to Karen Egloff, and that Karen Egloff "intends to resume residence," apparently upon her mother's death. Also in the response, "Karen Egloff, et al." asserted that "because John O'L[o]uglin's standing has not been challenged, the ...

---

11. A statement prepared by Bonnie Bick was read into the record at the hearing before the Planning Board. In addition, a representative of another Bick group member, the Anacostia Watershed Society, Inc., testified at the Planning Board hearing. All of the members of the Bick group were parties to the proceedings before the District Council, with Bick and Jon W. Robinson representing the Sierra Club, Inc.

12. Although a scheduling order signed by the trial court required that the petitioners' memorandum be filed by October 3, 1998, the memorandum was not filed until October 13.

13. Susan Egloff was a party to the District Council proceedings but not the proceedings before the Planning Board.

Motion to Dismiss will accomplish nothing more than trying to silence one more voice speaking out against the artificial and arbitrary zoning process under which the District Council approved The Peterson Companies, Inc.'s entertainment/retail complex." Interestingly, the response to the motion made no mention of the Bick group or the standing of its members.

Peterson and the District Council timely filed separate memoranda in support of the District Council's decision, and a hearing on the petition for judicial review was scheduled for November 12, 1998. Two days before the hearing, O'Loughlin, acting *pro se*, filed documents dismissing Dernoga as his counsel and dismissing with prejudice the petition for judicial review as to himself only.

At the hearing on November 12, counsel for Peterson and the District Council contended that the entire case should be dismissed because O'Loughlin was no longer a petitioner and, as urged in the earlier-filed written motion, Egloff did not have standing. No mention was made of the Bick group by either party. Dernoga represented to the court that both Egloff and her mother were present in the courtroom. He proffered that they would testify to the effect that Susan Egloff had, in her will, devised the family home to Karen Egloff. Based on the proffer, the court determined that Karen Egloff had a "valid vested remainder that is an equitable interest" in the property. It therefore concluded that Egloff had standing, and the hearing proceeded.

In its opinion affirming in part and reversing in part the District Council's decision, the trial court noted that the members of the Bick group entered the case as petitioners after Egloff and O'Loughlin filed their petition, and that O'Loughlin discharged Dernoga prior to the hearing and did not appear to represent himself. In response to a post-trial motion filed by Peterson [14], the court amended its opinion to clarify that the members of the Bick group were respondents

---

14. The motion was filed pursuant to Md. Rule 2–535(a).

rather than petitioners, and that O'Loughlin had dismissed his case with prejudice.

## DISCUSSION

## I

### Egloff's Lack of Standing

Section 8–106(e) of art. 28 of the Annotated Code of Maryland authorizes judicial review of decisions of the District Council of Prince George's County and sets forth the requirements for standing. The section provides, in pertinent part:

In Prince George's County, any incorporated municipality located in Prince George's County, *any person or taxpayer in Prince George's County,* any civic or homeowners association representing property owners affected by a final district council decision, and, if aggrieved, the applicant may have judicial review of any final decision of the district council. Proceedings for review shall be instituted by filing a petition in the Circuit Court of Prince George's County within 30 days after service of the final decision of the district council....

Code (1975, 1997 Repl.Vol.), § 8–106(e) of art. 28 (emphasis added).[15]

---

**15.** Section 713 of art. VII of the Charter for Prince George's County states, in pertinent part, that "[i]n addition to any person otherwise entitled to judicial review of a final decision of the Council in a zoning case, any person of record shall be entitled to judicial review of said decision without the necessity of pleading or proving any special loss, injury, or grievance." Under § 701(e) of art VII of the Charter, "[a]ny 'Person of Record' *shall include* the applicant for a zoning map amendment or special exception to a zoning regulation or any municipality, taxpayer or association of taxpayers in Prince George's County who appears in a zoning case in writing, or by counsel at any time prior to the final decision therein." (Emphasis added.) Arguably, the language of § 701(e) does not expressly *exclude* from being a "person of record" a person who appeared at a Planning Board hearing but had no other real connection with the case or County. Even assuming, *arguendo,* that such a person could be a "person of record," and therefore have standing within the contemplation of § 713 of the Charter, however, such a person could not petition for judicial review from a District

Peterson and the District Council argued in the trial court, as they argue on appeal, that Egloff was not a "person or taxpayer in Prince George's County" within the meaning of § 8–106(e) and therefore did not have standing to petition for judicial review of the District Court's approval of Peterson's conceptual site plan. Peterson and the District Council also argued below and reiterate on appeal that Egloff was not "aggrieved" by the District Council's decision. In denying the motion to dismiss, the trial court did not address the argument that Egloff was not a person or taxpayer in Prince George's County. Rather, the court focused on whether Egloff was aggrieved and determined that she was. As we have observed, the court concluded that because Egloff's family home, which was located near the proposed development, was devised to Egloff in her mother's will, Egloff had a "valid vested remainder interest" in the property.

▆▆▆ There is simply no requirement under § 8–106(e) that a petitioner be aggrieved in order to have standing unless the petitioner is the applicant for approval of the conceptual site plan—in this case Peterson.[16] By 1994 Laws of Maryland,

---

Council decision involving land within the Maryland–National Regional District unless the person also had standing under § 8–106(e) of art. 28. The Court of Appeals made clear in *Prince George's County v. Maryland–National Capital Park and Planning Commission*, 269 Md. 202, 223–27, 306 A.2d 223, *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973), that when the land in question is within the Regional District, it is the state legislative enactments and not the county charter provisions that apply. Thus, § 8–106(e) is the definitive guide for determining standing in this case.

As an incidental matter, § 713 of the Charter conflicts with § 8–106 of art. 28 on another basis. Section 713 provides that the circuit court decision upon the petition for judicial review may be appealed to the Court of Appeals. Section 8–106(j) directs that such a decision may be appealed to the Court of *Special* Appeals.

**16.** We nevertheless note that, contrary to the trial court's conclusion, Egloff did *not* have a valid vested remainder interest in the family home. It has long been established that an "estate or interest vests at the death of the testator" absent a clear provision in the will to the contrary. *Small v. Small*, 90 Md. 550, 568, 45 A. 190 (1900) (regarding vesting of devises to testator's children subject to life estate to wife) (citing *Larmour v. Rich*, 71 Md. 369, 18 A. 702 (1889)). *See also Hans*

Chapter 405, the Legislature amended § 8–106(e) for the specific purpose of "clarifying that the aggrievement standard required to appeal to the circuit court only applies to the applicant." [17] The key inquiry, therefore, was not whether Egloff was aggrieved but whether she was a person or taxpayer in Prince George's County.

The parties agree that, pursuant to the plain language of § 8–106(e), in order to have had standing Egloff must have been either a person in Prince George's County or a taxpayer in Prince George's County. They further agree that Egloff was not a taxpayer in the County. The appellants/cross-appellees contend that Egloff was nevertheless a person in Prince George's County. In support of their position, the appellants/cross-appellees point to the assertions in the petitioner's response to the motion to dismiss Egloff from the case, to the effect that Egloff spent a "substantial" amount of time at the family home and occasionally resided there in order to take care of her mother.

No evidence in the record supports the assertion that Egloff resided in the family home, occasionally or otherwise. At the hearing before the Planning Board, Egloff cryptically stated:

*v. Safe Deposit & Trust Co.,* 178 Md. 52, 62, 12 A.2d 208 (1940) (regarding vesting of devises to testator's grandchildren subject to trusts for lives of wife, children, and sister); *Nicodemus Nat. Bank v. Snyder,* 178 Md. 140, 143–44, 12 A.2d 518 (1940) (regarding vesting of devises to testatrix's children subject to life estate to one daughter). Egloff's mother was not dead at the time of the proceedings below, and any number of circumstances could arise to prevent Egloff's interest from ever vesting. For example, Egloff's mother could sell the property, lose it through foreclosure, or simply change her will. As Egloff did not have a vested interest in the family home, she could not have been aggrieved by the District Counsel's approval of the conceptual site plan for the nearby development.

**17.** The Legislature did not amend § 8–106(j), which appears to require that a party to the circuit court action must be aggrieved in order to appeal to this Court. The section provides, in pertinent part: "In Prince George's County, the district council, the applicant, or any party to the circuit court review who is an aggrieved party may secure a review of any final judgment of the Prince George's County Circuit Court under this title by appeal to the Court of Special Appeals...."

... I am mostly representing my family. *They* have a home at 229 Panorama Drive. *We* have lived there for 41 years. I also represent some of the residents that I've had a chance to speak with. They share some of my views and my family's.

(Emphasis added.) When the chairperson informed Egloff that she could represent her family only if she lived in the family home and could not represent other area residents at all, she responded only: "All right. Fine." Egloff did not state that she did, in fact, reside in the family home. Indeed, the assertions made in the response to the motion to dismiss and, later, in the brief of the appellants/cross-appellees filed in this Court make clear that Egloff left the Planning Board with a misimpression. While other members of her family may have lived in the home for 41 years, Egloff herself lived there for only 19 years, apparently during her youth. Her address at the time of the hearing was in Calvert County. At the hearing before the trial court, the petitioners offered no evidence regarding Egloff's residence. Although counsel for the petitioners told the court that Egloff and her mother were in the courtroom and available to testify, that statement was made in the course of discussion of Susan Egloff's will. Counsel did not proffer that Egloff or her mother would testify that Egloff resided in the family home.

■■■■ Even if the evidence did establish that Egloff occasionally resided in the family home—and we find that it does not—we would not conclude that Egloff was therefore a "person ... in Prince George's County" within the contemplation of § 8–106(e). Section 8–106(e) confers a benefit on persons in Prince George's County—the right to petition for judicial review of a decision of the District Council in a zoning case. In arguing that Egloff occasionally resided at the family home, the appellants/cross-appellees implicitly posit that a person in Prince George's County is a resident of Prince George's County. The Court of Appeals has explained that, where a constitutional or statutory provision confers a benefit based on residency, a person's residence is deemed to be the

place where he or she is domiciled, not merely where he or she is physically present. *See Bainum v. Kalen,* 272 Md. 490, 496–99, 325 A.2d 392 (1974) (where State Constitutional provision required candidate to reside in Maryland for three years immediately prior to running for State Senate or House of Delegates, person who was raised in Montgomery County but was domiciled in Michigan for portion of required period was not qualified to run, even though he occasionally visited and resided with parents in Montgomery County during period).

> A person may have several places of abode or dwelling but "[h]e can have only one domicile at a time." ... A person's domicile has been defined as the place "with which he has a settled connection for legal purposes" and the "place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention[18] of removing therefrom, and to which place he has, whenever he is absent, the intention of returning."

*Id.* at 497, 325 A.2d 392 (citations omitted). " 'It is a fundamental rule that, in order to effect a change of domicile, there must be an actual removal to another habitation, coupled with an intention of remaining there permanently or at least for an unlimited time.' " *Id.* at 498, 325 A.2d 392 (citation omitted). *See also Best Drywall, Inc. v. Berry,* 108 Md.App. 381, 392–93, 672 A.2d 116 (1996).

In short, the argument that Egloff is a person in Prince George's County because she occasionally resides in Prince George's County must fail because it runs afoul of the established rule that a statute that confers a benefit based on residency confers that benefit only on those persons who maintain a principal, fixed, and permanent home in the designated place. To hold otherwise would open the door for any person who occasionally visits Prince George's County over-

---

**18.** In the response to the motion to dismiss Egloff from the case, the petitioners asserted that Egloff intended to resume permanent residence in the family home when it became hers. The petitioners did not suggest that Egloff had a present intention to resume permanent residence.

night to challenge a decision of the District Council. Challenges could be lodged by tourists from other states who stay in Prince George's County hotels or campgrounds, or by persons who spend holidays visiting friends or relatives in Prince George's County. It defies common sense to believe that the Legislature intended to create such a free-for-all when it enacted the standing requirements set forth in § 8–106(e). "[A] statute must be construed to effectuate the real and actual intention of the legislature." *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195 (1985). "[W]e approach the analysis of the language from a 'commonsensical,' rather than a technical perspective. . . ." *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992) (citation omitted). The "rules of statutory construction require us to avoid construing a statute in a way that would lead to absurd results." *Blandon,* 304 Md. at 319, 498 A.2d 1195.

The appellants/cross-appellees point to nothing, other than Egloff's "occasional residence" in Prince George's County, to support their contention that Egloff had standing. We therefore conclude that Egloff did not have standing to petition for judicial review.

## II

### Members of Bick Group as Petitioners

Peterson and the District Council further contend that, while members of the Bick group may have had standing to petition for judicial review of the District Council's decision, they did not file a proper petition. The appellees/cross-appellants contend that since O'Loughlin dismissed his case, Egloff did not have standing, and the Bick group did not file a proper petition, there was nothing before the trial court to review. The appellants/cross-appellees respond that, while the Bick group did not file a petition, its members properly secured their status as petitioners and joined in the petition filed by Egloff and O'Loughlin when the group filed its response to that petition before O'Loughlin dismissed his case. The appellants/cross-appellees seemingly ignore that the trial

court granted Peterson's post trial motion to clarify that the members of the Bick group were respondents and not petitioners.

Preliminarily, we observe that Peterson and the District Council did not move below to dismiss the Bick group from the case. Nothing in the record persuades us, however, that the appellees/cross-appellants were required to file such a motion to dismiss. The Bick group did not specify its status in its response to the petition for review filed by Egloff and O'Loughlin. In the headings of the documents filed by Dernoga on behalf of the petitioners after the Bick group entered the case, the petitioners were identified simply as "Karen Egloff, et al." The response to the motion to dismiss asserted that O'Loughlin had standing to petition for judicial review even if Egloff did not. It made no mention of the standing of the members of the Bick group. Dernoga identified Egloff, O'Loughlin, and the members of the Bick group as "Petitioners" when he entered his appearance as counsel on their behalves, on the same day that he filed the Bick group's response to Egloff's and O'Loughlin's petition. While Peterson and the District Council might have discerned from this that the members of the Bick group believed themselves to be aligned with Egloff and O'Loughlin as petitioners, Peterson and the District Council were not required to conduct such detective work in order to ascertain the identities of the opposing parties. Nor were they required to proceed as if the members of the Bick group had properly entered the case as a petitioners if they had not actually done so.

The question of whether the members of the Bick group properly entered the case as petitioners, with respect to the petition filed by Egloff and O'Loughlin, when they filed a response to that petition is therefore properly before this Court. Such an entry would have been necessary in order for this Court to conclude that proper petitioners remained in the case even after O'Loughlin dismissed his case and even though Egloff did not have standing. To resolve the question, we look first to the plain language of the applicable rules of procedure. As the Court of Appeals has explained:

To interpret rules of procedure and statutes we use the same canons and principles of construction, beginning our analysis by looking at the plain language—looking to the words of the rule and giving them their ordinary and natural meaning; if the words of the rule are clear and unambiguous, our analysis ordinarily ends.... When the language is ambiguous, we may look to the intent behind the statute or rule, but "our mission is to give the rule a reasonable interpretation in tune with logic and common sense."

*Lerman v. Heeman,* 347 Md. 439, 443, 701 A.2d 426 (1997) (interpreting Md. Rule 2–614) (citations omitted).

■ The rules governing judicial review of administrative decisions are set forth in Title 7, Chapter 200 of the Maryland Rules of Procedure. Significantly, Md. Rule 7–202(a) provides: "A person seeking judicial review under this chapter *shall* file a petition for judicial review in a circuit court authorized to provide the review." (Emphasis added.) " 'Under settled principles of statutory construction, the word "shall" is ordinarily presumed to have a mandatory meaning.' " *In Re James S.,* 286 Md. 702, 708, 410 A.2d 586 (1980) (citation omitted). Under section (c) of the Rule, the petition need only "request judicial review, identify the order or action of which review is sought, and state whether the petitioner was a party to the agency proceeding," or, if the petitioner was not a party to the agency proceeding, "state the basis of the petitioner's standing. No other allegations are necessary." Section (d)(3) provides that, once the petition has been filed, the agency must notify all other parties to the agency proceeding that the petition has been filed and that "*a party wishing to oppose the petition must file a response* within 30 days after the date the agency's notice was mailed...." (Emphasis added.)

Rule 7–203 provides, in turn:

(a) *Generally.* Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(1) the date of the order or action of which review is sought;

(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

(b) *Petition by other party.* If one party files a timely petition, any other person may file a petition within 10 days after the date the agency mailed notice of the filing of the first petition, or within the period set forth in section (a), whichever is later.

Responses to petitions for judicial review are addressed by Md. Rule 7–204. It is that rule on which the appellants/cross-appellees base their contention that the members of the Bick group had only to file a timely response in order to enter the case as petitioners. Section (a) of Rule 7–204 states: "Any person, including the agency, who is entitled by law to be a party and who wishes to participate as a party shall file a response to the petition. The response shall state the intent to participate in the action for judicial review. No other allegations are necessary." Section (b) provides that the person may file with the response a preliminary motion addressed to "any ... matter that would defeat a petitioner's right to judicial review." Section (c) states that the response "shall be filed within 30 days after the date the agency mails notice of the filing of the petition" and "need be served only on the petitioner."

Finally, Rule 7–207(a) directs that petitioners "shall file a memorandum setting forth a concise statement of the questions presented for review, a statement of facts material to those questions, and argument on each question...." Any person who has filed a response may then file "an answering memorandum in similar form." *Id.*

The plain language of the rules, read together, makes clear that Chapter 200 of Title 7 contemplates that a

person who files a response is a person who opposes the petition for judicial review. Md. Rule 7–203 sets forth the time limitations for participating in a case as a petitioner. A person who seeks to challenge an administrative agency decision must file a petition either within 30 days after the triggering event or within 10 days after the date the agency mails notice that another person has filed a petition.

Within 30 days after the date the agency mails notice that a petition has been filed, any responses must be filed. *See* Md. Rule 7–204(c). Md. Rule 7–204(a), which addresses who may file a response, does not expressly provide that such a person must be one who opposes the petition. Such a provision would merely state the obvious, however, as by common parlance, a respondent is "the party against whom a motion or petition is filed." Black's Law Dictionary 313 (7th ed.1999). Rules 7–202(d)(3)(B) and 7–207(a) make clear, moreover, that a person who files a response is a person who opposes the petition. Rule 7–202(d)(3)(b) states that the agency must notify all parties to the agency proceeding that "a party *wishing to oppose the petition* must file a response within 30 days after the agency's notice was mailed. . . ." (Emphasis added.) Rule 7–207(a) provides that "any person who has filed a response . . . may file an *answering* memorandum" after the petitioner has filed its memorandum. It is axiomatic that an answer is "a defendant's first pleading that addresses the merits of the case, [usually] by denying the plaintiff's allegations. An answer [usually] sets forth the defendant's defenses and counterclaims." Black's Law Dictionary 90.

The appellants/cross-appellees suggest that because the members of the Bick group sought only to ride on the coat tails of Egloff and O'Loughlin it would be nonsensical to require them to file a separate petition. The filing of a petition is no more burdensome than the filing of a response. As we have indicated, the petition need only request judicial review, apprise the court of the agency order for which review is sought, and set forth the basis of the petitioner's standing. *See* Md. Rule 7–202(c). It is not until the memorandum is filed that the petitioner is required to present questions for

review, summarize the facts, and set forth argument. *See* Md. Rule 7–207(a). Had the Bick group filed a proper petition and expressly indicated its intent to proceed jointly with Egloff and O'Loughlin, it would not have been required to file a separate memorandum.

Even if we believed that the applicable rules were ambiguous—and we do not—the history of Title 7, Chapter 200 establishes beyond cavil that a petitioner must timely file a petition for review within the time constraints of Md. Rule 7–203, and that a person who may later file a response to the petition under Rule 7–204 is a person who opposes the petition.

Chapter 200 of Title 7 replaced former Subtitle B of Chapter 1100 of the Maryland Rules effective July 1, 1993. Rule 7–203 is based on former Rule B4, which permitted a trial court to alter or waive the requirement that a petition be filed within 30 days of the triggering event. A note by the Court of Appeals Standing Committee on Rules of Practice and Procedure accompanies Rule 7–203 and states: "The provisions of former Rule B4 concerning the shortening and extending of time are not carried forward. *The time for initiating an action is in the nature of a statute of limitations ....*" Committee note to Md. Rule 7–203, Maryland Rules, Vol. 1 at 805 (emphasis added.) *See Kim v. Comptroller of the Treasury,* 350 Md. 527, 535–36, 714 A.2d 176 (1998) (explaining that the 30–day requirement of Md. Rule 7–203(a) is not jurisdictional but, rather, is in the nature of a statute of limitations); *Colao v. County Council of Prince George's County,* 346 Md. 342, 361–62, 697 A.2d 96 (1997) (discussing Md. Rule 7–203(a) as a statute of limitations). Any suggestion that a petitioner need not actually file a petition but need only make his intention to participate in the case known within 30 days after receiving notice that a petition has been filed by someone else flies in the face of the Court's intent that Rule 7–203 serve as a strict time limitation.

A note by the Reporter for the Court of Appeals Standing Committee on Rules of Practice and Procedure, which accom-

panied proposed Rule 7–204 when it was submitted by the Committee to the Court of Appeals for approval, explained that the term "response" as used in that rule is shorthand for "answer" or "preliminary motion." Reporter's note to proposed Md. Rule 7–204, 19 Md. Reg. 26 at 2278 (Dec. 23, 1992). As we have explained, an answer generally denies the plaintiff's allegations and sets forth defenses or counterclaims. *See* Black's Law Dictionary 90.

The Standing Committee held numerous meetings regarding Title 7, Chapter 200 before the rules were adopted to replace Subtitle B. Minutes of the meetings similarly reflect that the Committee intended that a response would be filed by a person who opposes a petition. At one meeting, a committee member explained that a response is the equivalent of "a notice of participation as an appellee." *See* Minutes of Court of Appeals Standing Committee on Rules of Practice and Procedure for September 6 & 7, 1991 at 70. At a later meeting, the Honorable Alan M. Wilner, then Chairman of the Committee, explained that even though proposed Rule 7–204(a) states that a response may be filed by any person who wishes to participate as a party, that does not mean that "another *petitioner* can wait for 30 days." Minutes of Court of Appeals Standing Committee on Rules of Practice and Procedure for March 13, 1992 at 11 (emphasis added). The Committee agreed that it was "a party wishing to oppose the petition [who was entitled to] file a response within 30 days." *Id.* at 12.

██ As the trial court determined in granting Peterson's post trial motion for clarification, the members of the Bick group did not file a proper petition and did not enter the case as petitioners when they filed a response. O'Loughlin dismissed his case prior to the hearing on his petition and, as we have explained, Egloff did not have standing to file a petition. Under the circumstances, there was no basis for the trial court to review the District Court's decision.

**JUDGMENT VACATED; APPELLANTS/CROSS–APPELLEES TO PAY THE COSTS.**